EMILY H. CHEN (Bar No. 302966)
echen@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, California 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901

AMEET A. MODI (*pro hac vice* application pending)
amodi@desmaraisllp.com
RYAN G. THORNE (*pro hac vice* application pending)
rthorne@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

*Attorneys for Plaintiff Slack Technologies, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Slack Technologies, Inc., | Case No. 3:20-cv-01509 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT** |
| v. | **DEMAND FOR JURY TRIAL** |
| Phoji, Inc., | |
| Defendant. | |

Plaintiff Slack Technologies, Inc. ("Slack") seeks a declaratory judgment that Slack does not infringe any claim of U.S. Patent No. 9,565,149 ("'149 patent," Exhibit A).

**NATURE OF THE ACTION**

1. This is an action for a declaratory judgment arising under the patent laws of the United States, Title 35 of the United States Code. Slack seeks a declaratory judgment that Slack does not infringe any claim of the '149 patent.

**PARTIES**

2. Slack is a Delaware corporation with its principal place of business at 500 Howard Street, San Francisco, California 94105. Slack, formerly known as Tiny Speck, Inc., has been registered with the California Secretary of State since March 2009. Slack employs nearly 1000 employees in its headquarters in San Francisco, California. Slack provides a layer of the business technology stack that brings together people, applications and data—a hub for collaboration where people can effectively work together, access critical applications and services, and find important information to do their best work. People around the world use Slack to connect their teams, unify their systems and drive their business forward.

3. On information and belief, Defendant Phoji, Inc. ("Phoji")[1] is a company incorporated and registered under the laws of Delaware. On information and belief, Phoji's registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. In correspondence with Slack, representatives of Phoji have alleged that Phoji has the right to assert the '149 patent. On information and belief, Phoji distributes its primary product—a mobile application—almost exclusively through California businesses, including Google Inc.'s Google Play and Apple Inc.'s App Store.

4. On information and belief, Phoji, Inc. was previously known as "Phoji, LLC." Phoji, LLC was originally incorporated as "Brilliant Mobile LLC" on October 9, 2012 in Minnesota. On information and belief, Phoji, LLC was a Minnesota limited liability company with a principal place of business at 115 Washington Avenue North, Minneapolis, Minnesota

---

[1] All references to "Phoji" are to Phoji, Inc. unless otherwise noted.

55401, and with a registered address for service of 920 Second Avenue South, 1000 International Centre, Attn: Daniel J. Young, Minneapolis, Minnesota 55402. On information and belief, the Manager of Phoji, LLC was Jay Coatta, and its Registered Agent was Jon Christensen.

5. On October 23, 2019, Phoji, LLC filed a "Conversion Filing 322C to Other Jurisdiction—Limited Liability Company (Domestic)" with the Minnesota Secretary of State. *See* Exhibit B, Oct. 23, 2019 Office of the Minnesota Secretary of State Articles of Conversion filed by Phoji, LLC. On information and belief, by filing these Articles of Conversion, Phoji, LLC converted itself to Phoji, Inc., a Delaware organization no longer authorized to transact business in the state of Minnesota, and whose agent for service of process is 1000 International Center, 920 2nd Avenue S., Minneapolis, Minnesota 55402, c/o Barry O'Neil. As of February 20, 2019, Phoji, LLC's status with the Minnesota Secretary of State is "Inactive." *See* Exhibit C, Office of The Minnesota Secretary of State, Business Record Details for Phoji, LLC, *available at* https://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=2f6a0d51-2612-e211-bc43-001ec94ffe7f (last visited Feb. 20, 2020). On information and belief, by filing the Articles of Conversion pursuant to Chapter 322C.1008 of the Minnesota Statutes, Phoji, Inc. is for all purposes the same entity as Phoji, LLC, the entity that existed before the conversion. Minnesota Statue § 322C.1010.1, Effect of Conversion ("An organization that has been converted pursuant to sections 322C.1007 to 322C.1009 is for all purposes the same entity that existed before the conversion."). When the conversion took effect, all property owned by Phoji, LLC vested in the new entity, Phoji, Inc. *See* Minnesota Statue § 322C.1010.2(1) ("all property owned by the converting organization remains vested in the converted organization").

6. Additionally, on December 26, 2018, Phoji, Inc. was formed in Delaware. *See* Exhibit D, Dec. 26, 2018 State of Delaware Articles of Incorporation. On the same day, Phoji, Inc. filed additional paperwork converting Phoji, LLC (Minnesota) to Phoji, Inc. (Delaware), pursuant to § 265 of the Delaware General Corporation Law. *See* Exhibit E, Dec. 26, 2018 State of Delaware Certificate of Conversion from a Limited Liability Company to a Corporation Pursuant to Section 265 of the Delaware General Corporation Law. Under Section 265 of the Delaware General Corporation Law, "the corporation of this State shall, for all purposes of the

laws of the State of Delaware, be deemed to be the same entity as the converting other entity . . . and all property, real, personal and mixed . . . and causes of action belonging to such other entity, shall remain vested in the domestic corporation to which such other entity has converted and shall be the property of such domestic corporation . . . ." Delaware General Corporation Law § 265(f).

7. The U.S. Patent Office Patent Assignment Search Database indicates that Phoji, LLC is the most recent purported assignee of the '149 patent. Exhibit F, USPTO Patent Assignment Search for U.S. Patent Application No. 14/072,418 (Feb. 19, 2020). For the reasons above, Phoji, Inc. is the same entity as the previously-existing Phoji, LLC and holds all property that Phoji, LLC previously held. Accordingly, on information and belief, the rights to enforce the '149 patent are vested in Phoji, Inc. *Id.*

8. As described further herein, Phoji has repeatedly asserted to Slack that it (*i.e.*, Phoji, Inc.) is the owner of the '149 patent, and has repeatedly asserted that Slack infringes the '149 patent.

9. The Court should not allow the threat of a future lawsuit against Slack to cast a cloud over Slack's business, causing uncertainty for Slack regarding the ongoing provision or use of its products.

10. There exists a substantial controversy between Slack and Phoji having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of noninfringement.

**PHOJI HAS ATTEMPTED TO ASSERT THE '149 PATENT IN CALIFORNIA**

11. The U.S. Patent and Trademark Office ("PTO") issued the '149 patent, titled "Media Messaging Methods, Systems, and Devices," on February 7, 2017. A true and correct copy of the '149 patent is attached as Exhibit A.

12. Brilliant Mobile, LLC was the named applicant for the '149 patent when the parent application, No. 14/072,418, was filed on November 5, 2013.

13. On November 11, 2013, named inventor Robert Freidson assigned his interest in the '149 patent to Brilliant Mobile, LLC. On November 11, 2013, named inventor Max Freidson assigned his interest in the '149 patent to Brilliant Mobile, LLC. On November 13, 2013, named

1  inventor Sergey Toklachev assigned his interest in the '149 patent to Brilliant Mobile, LLC. On
2  November 18, 2013, named inventor Jay David Coatta assigned his interest in the '149 patent to
3  Brilliant Mobile, LLC. On July 31, 2014, named inventor John Mikkelsen assigned his interest in
4  the '149 patent to Brilliant Mobile, LLC. On November 17, 2014, over a year after the first
5  inventor assignment was executed, the inventors' assignments conveying their interests in the
6  '149 patent to Brilliant Mobile, LLC—later known as Phoji, LLC and now known as Phoji, Inc.—
7  were recorded with the PTO.

8        14.    In correspondence with Slack, representatives of Phoji have alleged that Phoji is
9  the owner of the '149 patent. On information and belief, Phoji is the current owner of all
10 substantial rights in the '149 patent.

11       15.    Phoji has taken steps, in this District, to assert the '149 patent against Slack. Phoji's
12 purposeful efforts to enforce and license the '149 patent in California as described below include
13 multiple letters accusing Slack of infringing at least claim 1 of the '149 patent, as well as several
14 telephonic meetings with a Slack representative.

15       16.    On June 24, 2019, an agent of Phoji sent a letter to Slack's San Francisco
16 headquarters, asserting that Phoji is "a Delaware corporation and international SaaS [Software as
17 a Service] company (www.phojiapp.com) . . . approaching companies that may have a business
18 interest in licensing Phoji's patent portfolio. Phoji, Inc. is the owner of U.S. Patent 9,565,149 B2
19 entitled, MEDIA MESSAGING, METHODS, SYSTEMS AND DEVICES, which is generally
20 directed to creating emojis from real media and integrating images and text in messaging and
21 communication platforms . . . [T]he utilization and deployment of the Slack Emoji and the recent
22 deployment of the clickable feature make us believe that Slack would find it beneficial to license
23 Phoji, Inc. intellectual property. We welcome the opportunity to discuss the potential licensing
24 agreement and terms." Slack responded on June 26, 2019, detailing reasons why Slack does not
25 infringe any of the '149 patent's claims.

26       17.    On October 8, 2019, an agent of Phoji sent a letter to Slack's San Francisco
27 headquarters, continuing to assert that "Slack infringes the claims of the '149 patent." Phoji
28

enclosed a four-page partial claim chart purporting to demonstrate infringement of elements of claim 1 of the '149 patent.

18. On October 14, 2019, a representative of Phoji had a telephonic meeting with a Slack representative from Slack's San Francisco headquarters. In the meeting, the representative of Phoji expressed Phoji's intention to license the '149 patent to Slack. On the telephone call, Slack explained further reasons why it does not infringe the '149 patent and therefore does not require a license.

19. On November 6, 2019, Slack provided a further response to Phoji's assertions, providing additional detail as to why Slack does not infringe the '149 patent.

20. On December 2, 2019, an agent of Phoji sent a letter to Slack's San Francisco headquarters, stating that "Phoji continues to disagree with your analysis that Slack does not infringe upon the '149 patent." Phoji again requested that Slack agree to a one-time license of Phoji's '149 patent. On December 11, 2019, Slack responded to Phoji, explaining additional reasons why the '149 patent does not cover any products or services offered by Slack.

21. On December 13, 2019, an agent of Phoji sent a letter to Slack's San Francisco headquarters, stating that, while it was open to "reasonable negotiations," it could be left "with little choice but to consider alternative paths to address Slack's infringement of the '149 patent." Phoji reiterated proposed terms for a one-time license of the '149 patent. And Phoji set a deadline on the offer: "Phoji extends this offer at this time with the expectation that the terms of the agreement can be finalized and executed by December 31, 2019."

22. On December 17, 2019, an agent of Phoji had a telephonic meeting with a Slack representative, which Slack participated in from its San Francisco headquarters. In the meeting, Phoji protested that putting together a full claim chart of alleged infringement was a significant burden and expense. Phoji also expressed that it was not concerned about invalidity in view of any prior art.

23. On December 20, 2019, a representative of Phoji had a telephonic meeting with a Slack representative, which Slack participated in from its San Francisco headquarters. Slack reiterated that the '149 patent does not cover any products or services offered by Slack.

24. On December 23, 2019, a representative of Phoji had another telephonic meeting with a Slack representative, which Slack participated in from within this District. Slack reiterated that the '149 patent does not cover any products or services offered by Slack.

25. On January 7, 2020, a representative of Phoji had another telephonic meeting with a Slack representative, which Slack participated in from its San Francisco headquarters. In the meeting, Phoji again proposed a license agreement involving a one-time payment. Phoji explained that, if Slack did not license the '149 patent, its Board of Directors considered litigation to be the next step.

26. On January 14, 2020, a representative of Phoji had another telephonic meeting with a Slack representative, which Slack participated in from its San Francisco headquarters.

27. On January 14, 2020, after the telephonic meeting that same day, a representative of Phoji sent an email to a Slack representative in Slack's San Francisco headquarters, again proposing that Slack enter into a license agreement with Phoji regarding the '149 patent for a one-time payment.

28. On January 24, 2020, a representative of Phoji sent an email to a Slack representative in Slack's San Francisco headquarters, reaffirming Phoji's intention to attempt to resolve the matter.

29. On January 24, 2020, Slack provided a further response to Phoji via e-mail, reaffirming that Slack does not require a license to a patent it does not practice. Slack again pointed out that Phoji had never attempted to demonstrate that Slack infringes any claim of the '149 patent because Phoji had never provided a claim chart or any other material that identified any Slack functionality that allegedly meets every limitation of any single claim.

30. On January 29, 2020, a representative of Phoji had a telephonic meeting with a Slack representative, which Slack participated in from its San Francisco headquarters. In the meeting, the representative of Phoji confirmed Phoji's demand that Slack take a license to the '149 patent. On the telephone call, Slack explained further reasons why it does not infringe the '149 patent and therefore does not require a license. In an email following the telephonic meeting, the Phoji representative confirmed that Phoji did not intend to provide additional detail as to its

infringement allegations: "As our counsel and I have both indicated Phoji does not intend to provide a complete claims chart to Slack regarding this matter. Phoji will only utilize a complete claims chart as part of a formal legal process."

31. On February 13, 2020, an agent of Phoji sent a letter to Slack's San Francisco headquarters, requesting Slack to advise whether it "is interested in a business solution and avoiding the exposure and costs if Phoji is forced to litigate its infringement claims." Phoji enclosed a claim chart purporting to demonstrate infringement of certain claims of the '149 patent.

32. On February 20, 2020, Slack provided a further response to Phoji by letter from its San Francisco headquarters, explaining that was reviewing Phoji's February 13, 2020 chart, reiterating that Slack does not require a license to a patent it does not practice, and reaffirming that it had been engaged in good faith negotiations with Phoji since Phoji's initial correspondence in June 2019.

**PHOJI DISTRIBUTES ITS MOBILE APPLICATIONS THROUGH CALIFORNIA-BASED COMPANIES**

33. On information and belief, Phoji has distributed and continues to distribute its mobile applications through California-based companies to consumers in California.

34. For example, Phoji makes its mobile application available to users through The Apple App Store. *See* Phoji on the App Store, *available at* https://apps.apple.com/us/app/phoji/id988132052 (last visited Dec. 17, 2019).



*Id.*

35. Since September 30, 2015, Phoji has offered the Phoji app through the Apple App Store. Indeed, Phoji provided updates in 2015 and through August 2016, as shown by the Version History for the app:

| Version History | |
|---|---|
| 1.0.4<br>Minor bug fixes. | Aug 18, 2016 |
| 1.0.3<br>Broadcasters can now be filtered by state | Aug 16, 2016 |
| 1.0.2<br>Minor Bug Fixes. | Dec 2, 2015 |
| 1.0 | Sep 30, 2015 |

*See* Phoji on the App Store, Version History, *available at* https://apps.apple.com/us/app/phoji/id988132052 (last visited Dec. 17, 2019).

36. As demonstrated above, Phoji distributed its products through Apple Inc., which on information and belief is a California corporation with its principal place of business in the Northern District of California.

37. Phoji affirmatively chose to have its app distributed through the Apple App Store. On information and belief, in uploading Phoji's app to the App Store, Phoji had to appoint Apple as its agent in regards to marketing and delivery of Phoji's app. Thus, Phoji appointed a California corporation as its agent to distribute Phoji's app within California and the rest of the United States. Additionally, on information and belief, in order to distribute the app via the App Store, Phoji had to agree with Apple to submit to jurisdiction in California in any lawsuit with Apple involving the Phoji app.

38. On information and belief, in order to offer an application through the App Store, a third-party developer (such as Phoji) must be registered as an "Apple Developer," agree to the Apple iOS developer Program License Agreement with Apple, and pay a $99 yearly registration fee.

39. As a further example, Phoji offers its mobile app through the Google Play app store. *See* Phoji – Apps on Google Play, *available at* https://play.google.com/store/apps/details?id=com.phoji.app (last visited Feb. 19, 2020).



*Id.*

40. Phoji's app has been installed from the Google Play App store over 1,000 times and was last updated August 22, 2016. *See* Phoji – Apps on Google Play, *available at* https://play.google.com/store/apps/details?id=com.phoji.app (last visited Feb. 19, 2020).

41. On information and belief, Phoji knew from at least September 2015 through the present, that Google's principal place of business is in California.

42. Phoji affirmatively chose to have its app distributed through the Google Play Store. On information and belief, Google Inc. is a Delaware corporation with its principal place of business located in the Northern District of California. On information and belief, in order to distribute its app through the Google Play store, Phoji had to agree to jurisdiction in California in any lawsuit with Google regarding the app.

43. On its website, Phoji prominently asserts that its app is "patented," *i.e.*, that it practices one or more claims of the '149 patent. For example, Phoji's home page asserts that "Phoji is a patented cloud-based web app . . ." with the word "patented" hyperlinked to a copy of the '149 patent. *See* Phoji – Home, *available at* http://www.phojiapp.com (last visited Feb. 28, 2020).

> Phoji is a patented cloud-based web app that enables you to create custom photo-based emojis that deliver rich media such as audio, video, coupons and polls. Phojis can be embedded in existing apps, push notifications, emails, and more.

*Id.*

## PHOJI CONDUCTS BUSINESS IN CALIFORNIA AND WITH COMPANIES IN CALIFORNIA

44. On information and belief, Phoji conducts business in California and with companies in California.

45. For example, on information and belief, a representative from Phoji attended the Connected Marketer Institute Summit in San Francisco, California on January 23 and 24, 2017.



*See* Phoji, Facebook.com, https://www.facebook.com/pg/phoji/posts/ (Jan. 23, 2017) (last visited Feb. 26, 2020).

46. As a further example, on information and belief, Jon Christensen, President and Chief Executive Officer of Phoji, traveled from Minnesota to Los Angeles, California in late January 2020 to conduct business.

47. As a further example, Phoji conducts business with mCordis, which is a marketing services company with its only United States office in San Francisco. *See* Exhibit G, Business Wire, *mCordis Establishes the Connected Marketer™ Institute to Help Brands and MarTech Providers Thrive in Connected Era* (Aug. 9, 2016), *available at* https://www.businesswire.com/news/home/20160809005727/en/mCordis-Establishes-

Connected-Marketer%E2%84%A2-Institute-Brands-MarTech ("mCordis is a strategic mobile and connected marketing advisory and educational marketing services company with offices in London and San Francisco.") (last visited Feb. 20, 2020).

48.     Phoji is a charter member of mCordis's The Connected Marketer Institute, which helps "brand marketers and marketing technology providers understand and adopt new strategies to serve connected individuals, in real-time, at scale." *See* Exhibit G, Business Wire, *mCordis Establishes the Connected Marketer™ Institute to Help Brands and MarTech Providers Thrive in Connected Era* (Aug. 9, 2016), *available at* https://www.businesswire.com/news/home/20160809005727/en/mCordis-Establishes-Connected-Marketer%E2%84%A2-Institute-Brands-MarTech  (last visited Feb. 20, 2020).

49.     As a further example, Phoji also conducts business with Identity Praxis, Inc., which is an active California corporation.  *See* Exhibit H, California Secretary of State Business Search – Entity Detail – C3857377 Identity Praxis, Inc. (Feb. 20, 2020).  Michael Becker, who is the managing partner of both mCordis and Identity Praxis, Inc., posted his interview with Jon Christensen from Phoji on the Identity Praxis, Inc. website.  *See* Exhibit I, Michael Becker, *An Interview with Phoji*, Identity Praxis, Inc., https://identitypraxis.com/2016/05/24/an-interview-with-phoji/ (May 24, 2016) (last visited Feb. 20, 2020).

50.     As a further example, Phoji's website landing page, https://www.phojiapp.com, prominently features an example of its product allegedly being used in an advertisement from "Jamba Juice" on the "Escondido Promenade."



https://www.phojiapp.com/wp-content/uploads/2019/09/Jamba-Juice-Shortened.png (last visited Feb. 19, 2020). On information and belief, Jamba Juice on the Escondido Promenade is located in California, at 1282 Auto Park Way B, Escondido, California 92029.

51. As a further example, Phoji's website landing page also prominently features an example of its product allegedly being used in an advertisement from "Seatninja" offering reservations at "Stone Brewing World Bistro & Gardens – Liberty Station – San Diego."



https://www.phojiapp.com/wp-content/uploads/2019/09/Seatninga-Email-Image-223x300.png (last visited Feb. 19, 2020). On information and belief, the image is an advertisement by Seatninja

for reservations at Stone Brewing World Bistro & Gardens, which is located in California, at 2816 Historic Decatur Road, San Diego, California 92106. On information and belief, Seatninja, Inc. has a principal place of business at 600 Gianni Court, Roseville, California 95661. On information and belief, Phoji conducts business with Seatninja, Inc., which is a corporation located in California. On information and belief, Phoji, by conducting business with Seatninja, Inc., also thereby conducts business with Stone Brewing World Bistro & Gardens, which is a business located in California.

## JURISDICTIONAL STATEMENT

52. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and under the patent laws of the United States, Title 35 of the United States Code.

53. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

54. This Court also has personal jurisdiction over Phoji at least because it has made sufficient contacts with the state of California, including this District, by purposefully directing revenue-generation and enforcement activities concerning the '149 patent in this District, including at least its enforcement activities against Slack, which maintains its principal place of business in this District. *See supra* ¶¶ 2, 15–32. In addition, this Court has personal jurisdiction over Phoji at least because it has made sufficient contacts with the state of California, including this District, by purposefully directing development, licensing, revenue-generation, and marketing activities in the state of California and at residents of the state of California. *See supra* ¶¶ 11–51.

55. This Court has personal jurisdiction over Phoji at least because Slack's claim relates to Phoji's activities in this District. For example, Slack maintains its headquarters and principal place of business in this District, and Phoji has alleged that Slack has committed acts of infringement here.

56. It is fair and reasonable for this Court to exercise personal jurisdiction over Phoji in this action at least because, among other things, Phoji has directed its enforcement activities to Slack, which maintains its principal place of business in the District, and because witnesses and evidence concerning Slack's noninfringement are located in this District.

57. Therefore, personal jurisdiction may be exercised over Phoji in conformance with the United States Constitution, the California long-arm statute (*i.e.* California Code of Civil Procedure § 410.10), Federal Rule of Civil Procedure 4(k), and any other applicable law.

58. Venue is proper in this District under 28 U.S.C. §§ 1391(b)–(c) because Phoji is subject to personal jurisdiction here and because a substantial part of the events giving rise to Slack's claim occurred in this District. For example, Slack products and services are developed, sold, or offered for sale in this District. Slack seeks a declaration that its activities concerning those products and services do not constitute infringement of the '149 patent. *See supra* ¶ 1.

59. For the reasons set forth above, an immediate, real, and justiciable controversy exists between Phoji and Slack as to whether Slack is infringing or has infringed the '149 patent. Because this action presents an actual controversy with respect to the noninfringement of the '149 patent, the Court may grant the declaratory relief sought pursuant to 28 U.S.C. § 2201 *et seq.*

## INTRADISTRICT ASSIGNMENT

60. For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this Intellectual Property Action will be assigned on a district-wide basis.

## COUNT 1 – DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 9,565,149

61. Slack repeats and realleges each and every allegation contained in paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62. Phoji has alleged and continues to allege that Slack infringes the '149 patent. However, as explained below, Slack has not infringed and does not infringe any valid and/or enforceable claim of the '149 patent, directly or indirectly, literally or under the doctrine of equivalents, through the manufacture, use, sale, offer for sale, and/or import into the United States of any Slack products and/or services. By way of example, no Slack product and/or service satisfies at least limitations 1[e], 1[f], 1[g], and 1[h] of exemplary claim 1.

63. Exemplary claim 1 of the '149 patent recites:

| Limitation | Claim Language (emphasis added) |
|---|---|
| [P] | A communications system comprising: |
| [a] | a first user device presenting a first user interface; |
| [b] | a second user device presenting a second user interface; |
| [c] | a messaging cloud including: |
| [d] | at least one database of rich media data, and a semantic model, *the semantic model configured to*: |
| [e] | categorize a personalized image library *based on contact data and emotional state data*; |
| [f] | *receive a contact data input* from the first user device; |
| [g] | *receive an emotional state data input* from the first user device; and |
| [h] | automatically select an image for insertion into a message from a plurality of images in the personalized image library *based on the received contact data and received emotional state data*, and |
| [i] | wherein the database is a Media Messaging Platform, |
| [j] | a messaging service configured to: |
| [k] | receive a message, the message including a rich media data request from the first user device, |
| [l] | retrieve the requested rich media data from the at least one database of rich media data, insert the retrieved rich media data into the message while maintaining text flow, and |
| [m] | present the message to the second user device via the second user interface; and |
| [n] | a network operably coupling the first user device, the second user device, and the messaging cloud, |
| [o] | wherein the message is originally formatted on the first user device via the first user interface such that the rich media data request is within the message. |

64. As one non-limiting example, Claim limitation 1[e] requires a "semantic model" configured to categorize a "personalized image library based on contact data and emotional state data." Phoji has alleged Slack's Emoji library of meeting the claim limitations of claim 1 of the '149 patent reciting a "semantic model." But a Slack user's Emoji library is not "categorize[d]" "based on contact data and emotional state data," as required by claim 1. Rather, a Slack user's Emoji library is organized based on frequency and recency of use and a common physical attribute between Emojis. One exemplary common physical attribute used for organizing the Emoji library is grouping all flag Emojis (e.g., American Flag and Canadian Flag) together under an attribute called "Flags," as shown below.

*Slack Client Showing Emoji Library (annotated)*



65. As a further non-limiting example, no Slack product and/or service meets claim limitation 1[h]. Claim limitation 1[h] requires the "semantic model" to be configured to "automatically select an image for insertion into a message . . . based on the received contact data and received emotional state data." Phoji has alleged that "customized automatic responses" using the Slackbot feature of Slack meets claim limitation 1[h]. But the Slackbot feature does not "automatically select[s] an image . . . based on the received contact data and received emotional state data." Instead, Slackbot can be used to generate an automated message based on input phrases selected by the user.

Case 3:20-cv-01509-EMC   Document 1   Filed 02/28/20   Page 18 of 20



*Slack Customizable Workspace Website (annotations added)*

66. Accordingly, at least for the above reasons, no Slack product and/or service practices all the limitations of claim 1 of the '149 patent, and Slack has not infringed and does not infringe claim 1 of the '149 patent directly, indirectly, literally, or under the doctrine of equivalents.

67. Every claim of the '149 patent contains the claim limitations recited in claim limitation 1[e] and 1[h] recited above. Therefore, Slack does not infringe any of the other claims of the '149 patent for at least the same or similar reasons.

68. Slack does not induce infringement of any claim of the '149 patent because, for at least the reasons stated above, use of Slack's products and/or services do not directly or indirectly infringe any claim of the '149 patent. Moreover, Slack does not induce infringement of the '149 patent because it has not acted with the requisite specific intent to do so; to the contrary, as set forth herein, Slack believes in good faith that it does not infringe any claim of the '149 patent.

69. Slack does not contributorily infringe any claim of the '149 patent because, for at least the reasons stated above, Slack's products and/or services do not include every limitation of any claim of the '149 patent. In addition, Slack's products and services have substantial

noninfringing uses, including, for example, the use of Slack for messaging without the use of any emojis or "personalized image librar[ies]."

70. As set forth above, a substantial, immediate, and real controversy exists between Slack and the Phoji with respect to whether Slack infringes any claim of the '149 patent. Accordingly, Slack desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '149 patent.

71. Slack seeks a judgment declaring that Slack and its products have not and do not directly infringe, induce others to infringe, or contribute to the infringement of any claim of the '149 patent.

72. As a result of the acts described in the paragraphs above, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

73. A judicial declaration is necessary and appropriate so that Slack may ascertain its rights regarding the '149 patent.

74. Slack is entitled to a judicial declaration that it has not infringed and does not infringe any claim of the '149 patent.

## PRAYER FOR RELIEF

Slack respectfully requests the following relief:

A. That the Court enter a judgment declaring that Slack has not infringed and does not infringe any valid and enforceable claim of the '149 patent;

B. That the Court declare that this case is exceptional under 35 U.S.C. § 285 and award Slack its attorneys' fees, costs, and expenses incurred in this action;

C. That the Court award Slack any and all other relief to which Slack may show itself to be entitled; and

D. That the Court award Slack any other relief as the Court may deem just, equitable, and proper.

# JURY DEMAND

Slack hereby demands a jury trial on all issues and claims so triable.

DATED: February 28, 2020      By:  */s/ Emily H. Chen*

EMILY H. CHEN (Bar No. 302966)
echen@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, California 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901

AMEET A. MODI (*pro hac vice* application pending)
amodi@desmaraisllp.com
RYAN G. THORNE (*pro hac vice* application pending)
rthorne@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

*Attorneys for Plaintiff Slack Technologies, Inc.*

COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT     -19-     CASE NO. 3:20-CV-01509