1  **Elijah B. Van Camp (SBN 252289)**
   **evc@dewittllp.com**
2  **DeWitt LLP**
   **Two East Mifflin Street**
3  **Suite 600**
   **Madison, WI 53703**
4  **Telephone:  (608) 252-9275**
   **Facsimile:  (608) 252-9243**
5  *Attorneys for Defendant Phoji, Inc.*

6

7

8              **UNITED STATES DISTRICT COURT**

9       **NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)**

10

11  Slack Technologies, Inc.,              **CASE NO. 3:20-cv-01509-EMC**

12

13              Plaintiff,                 **DEFENDANT PHOJI, INC.'S NOTICE OF**

14                                         **MOTION AND MOTION TO DISMISS**

15        v.

16                                         The Honorable Edward M. Chen

17  Phoji, Inc.,

18                                         Hearing Date:  June 25, 2020

19              Defendant.                 Time: 1:30 p.m.

20                                         Courtroom 5

21

22

23

24

25

26

27

28

1    **TO PLAINTIFF SLACK TECHNOLOGIES, INC. AND ITS COUNSEL OF RECORD:**

2        PLEASE TAKE NOTICE THAT on June 25, 2020, at 1:30 p.m., or as soon thereafter as

3    may be heard, in the United States District Court, Northern District of California, located at 450

4    Golden Gate Avenue, 17th Floor, Courtroom 5, San Francisco, California 94102, before the

5    Honorable Edward M. Chen, Defendant Phoji, Inc. ("Phoji") shall and hereby does move for an

6    order dismissing Plaintiff Slack Technologies, Inc.'s ("Plaintiff" or "Slack") Complaint with

7    prejudice.  Dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack

8    of personal jurisdiction.

9        This Motion is based upon this Notice of Motion, the accompanying Memorandum of

10   Points and Authorities included herewith, the accompanying Declaration of Jon Christensen, and

11   all other evidence and argument that may be submitted on this Motion.

12   Dated:  May 18, 2020.

                                **DEWITT LLP**

                         By:    _/s/ Elijah B. Van Camp_
                                Elijah B. Van Camp (SBN 252289)
                                Two East Mifflin Street
                                Suite 600
                                Madison, WI 53703
                                evc@dewittllp.com
                                Telephone:  (608) 255-8891
                                Facsimile:  (608) 252-9243

                                ***Attorneys for Defendant Phoji, Inc.***

**DEFENDANT PHOJI, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**
Case No. 3:20-cv-01509-EMC

1

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................5

I.   INTRODUCTION ................................................................................................5

II.  LEGAL STANDARD ..........................................................................................5

III. SUMMARY OF RELEVANT FACTS .................................................................6

A.  The Parties ..........................................................................................................6

B.  The Patent ...........................................................................................................7

C.  Phoji's Negotiation Attempt with Slack ............................................................7

D.  Phoji's Commercialization Activities.................................................................9

IV. PLAINTIFF FAILS TO ESTABLISH GENERAL JURISDICTION BECAUSE
     PHOJI DOES NOT HAVE CONTINUOUS AND SYSTEMATIC CONTACTS
     WITH THIS DISTRICT ..................................................................................12

V.  PLAINTIFF CANNOT ESTABLISH SPECIFIC JURISDICTION BECAUSE PHOJI
     HAS NO CONTACTS WITH THIS DISTRICT, PHOJI HAS NOT PURPOSEFULLY
     DIRECTED ACTIVITIES TOWARD THIS FORUM, AND THE EXERCISE OF
     JURISDICTION OVER PHOJI WOULD BE UNREASONABLE ..............................14

A.  Phoji's Letters Are Not Sufficient to Confer Specific Personal Jurisdiction .................14

B.  Phoji's Other Contacts with This District Do Not Relate to the Enforcement or Defense
     of the '149 Patent and Are Not Sufficient to Confer Specific Personal Jurisdiction ......16

C.  Even if This Court Finds Specific Personal Jurisdiction Over Phoji, It Should Decline
     to Exercise Specific Personal Jurisdiction Because Doing So Would Be Unfair and
     Unreasonable ....................................................................................................19

VI. CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

*Adobe Sys. Inc. v. Tejas Research, LLC.*, No. C-14-0868 EMC, 2014 WL 4651654, at
*3 (N.D. Cal. Sept. 17, 2014) ...............................................................................19

*Alzheimer's Inst. of Am. v. Comentis, Inc.*, No. C 09-2772 VRW, 2009 WL 10672148,
at *2 (N.D. Cal. Nov. 13, 2009)......................................................................12, 19

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1019 (Fed. Cir. 2009)........13, 15

*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008) ......... 5, 14–17

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363
(Fed. Cir. 2006)...................................................................................6, 15, 16, 19

*Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008)...................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ........................ 6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)..................12, 13

*Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) ........................................ 6, 20

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ........................................ 6, 19

*King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011)........................................12

*Maxchief Investments Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1138
(Fed. Cir. 2018)................................................................................................14, 17

*NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1376 (Fed. Cir. 2017)............... 6, 14

*Petzila, Inc. v. Anser Innovation LLC*, 620 F. App'x 941, 943 (Fed. Cir. 2015) ................15, 16

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)......15

*Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003)........................16

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006) ........................12

*Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996)........................19

*Walden v. Fiore*, 571 U.S. 277, 277 (2014)........................................................................ 6

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017) ..... 5, 15

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      INTRODUCTION.**

3       The U.S. District Court for the Northern District of California (the "Court" or the

4   "District") should dismiss Phoji from this action.   Phoji is a Delaware corporation headquartered

5   in Minnesota.  Phoji does not rent or lease space in California, has no assets in California, and

6   has no employees in California.  The Court therefore lacks general personal jurisdiction over

7   Phoji.  Moreover, Plaintiff has not asserted that Phoji has the type of pervasive contact with

8   California required for general personal jurisdiction.  Furthermore, Plaintiff has failed to allege

9   any fact that would establish specific jurisdiction over Phoji.  Therefore, Phoji is not subject to

10  personal jurisdiction in this Court.

11      There is no specific jurisdiction because Phoji has done nothing to create a case or

12  controversy between itself and Plaintiff.  There is no "affiliation" between the District and Phoji

13  or the underlying controversy in this case and Phoji engages in no enforcement activities of the

14  '149 patent that would confer specific personal jurisdiction.  For these and other reasons as set

15  forth below, Phoji seeks dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

16

**II.     LEGAL STANDARD.**

17      In a patent case, including a declaratory judgment action involving a patent, Federal

18  Circuit law governs the personal jurisdiction inquiry.  *Xilinx, Inc. v. Papst Licensing GmbH &*

19  *Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017) (finding that, in a declaratory judgment action,

20  involving "only claims of patent noninfringement, [the Court applies] Federal Circuit law

21  because the jurisdictional issue is intimately involved with the substance of the patent laws")

22  (internal quotations and citations omitted).  The plaintiff must make prima facie showing that

23  this Court has jurisdiction over the defendant.  *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552

24  F.3d 1324, 1328–29 (Fed. Cir. 2008).  As shown below, Plaintiff has made no such prima facie

25  case and cannot therefore meet its burden to demonstrate that exercising personal jurisdiction

26  over Phoji would comport with due process.

27      A district court may exercise personal jurisdiction over a non-resident defendant if a two-

28  part inquiry is satisfied.  First, the state's long-arm statute must permit service of process on the

1   Defendant. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Next, jurisdiction

2   is proper if the defendant has "minimum contacts" with the forum state, such that the action

3   would not offend "traditional notions of fair play and substantial justice." *Id.*  California's long-

4   arm statute extends personal jurisdiction over non-resident defendants to the extent permitted by

5   the Due Process Clause of the Fourteenth Amendment.  Cal. Civ. P. Code § 410.10.  Therefore,

6   "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due

7   process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

8        Under the Due Process Clause, a defendant may be subject to either general personal

9   jurisdiction or specific personal jurisdiction. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d

10   1371, 1376 (Fed. Cir. 2017).  "A court may assert general jurisdiction over foreign . . .

11   corporations to hear any and all claims against them when their affiliations with the State are so

12   'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*

13   *Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

14        Specific jurisdiction, on the other hand, "focuses on the relationship among the

15   defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 277 (2014) (internal

16   quotations omitted).   To determine if the exercise of specific jurisdiction over an out-of-state

17   defendant is proper, the Court employs a three-prong test to determine whether (1) the defendant

18   purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates

19   to those activities; and (3) assertion of personal jurisdiction is reasonable and fair.  *Breckenridge*

20   *Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362–63 (Fed. Cir. 2006).  "The first two

21   factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the

22   third factor corresponds with the 'fair play and substantial justice' prong of the analysis."

23   *Inamed*, 249 F.3d at 1360.

24   **III.    SUMMARY OF RELEVANT FACTS.**

25        **A.    *The Parties*.**

26        As stated in Plaintiff's Complaint filed in this matter (the "Complaint"), Plaintiff is a

27   Delaware corporation with a principal place of business in San Francisco, California.  Compl., ¶

28   2.  Plaintiff has nearly 1,000 employees working in its headquarters in San Francisco, California.

1    *Id.*

2       Phoji is a Delaware corporation with its principal place of business in Minneapolis,

3 Minnesota. *See* Decl. of Jon Christensen ("Decl"), ¶¶ 2–3. Phoji was first formed in Minnesota

4 as Brilliant Mobile, LLC, a Minnesota limited liability company ("Brilliant Mobile") on October

5 9, 2012. *Id.*, ¶ 5. Brilliant Mobile began as a mobile application company. *Id.*, ¶ 7. On April

6 22, 2015, Brilliant Mobile changed its name to Phoji, LLC and later, Phoji, Inc. *Id.*, ¶ 6. As

7 Brilliant Mobile changed its name to Phoji, the focus of the company also changed. *Id.*, ¶ 7.

8 Phoji has since pivoted and now is a Software as a Service company. *Id.* On December 26,

9 2018, Phoji, Inc. was formed in Delaware. *Id.*, ¶ 6.

10       Using its patented app (the "App"), Phoji enables users to create custom photo-based

11 emojis that deliver rich media such as audio, video, coupons, and polls. *Id.*, ¶ 4. Phoji is

12 headquartered in Minneapolis, Minnesota and all of Phoji's office locations are in Minnesota.

13 *Id.*, ¶¶ 3, 11. In fact, Phoji does not have any locations or employees in California. *Id.*, ¶¶ 12–

14 13, 15. Additionally, Phoji does not have any bank accounts or any financial interest in

15 California. *Id.*, ¶ 15.

16       Phoji has not previously filed any enforcement action against any company in the District

17 or California. *Id.*, ¶ 22. The activities Phoji directed at Plaintiff consisted of sending letters,

18 email correspondence, and participating in telephone conversations with Plaintiff and its

19 representatives in an attempt to negotiate a license agreement concerning the '149 patent. *Id.*

20      **B.**     ***The Patent***.

21       The United States Patent and Trademark Office (the "USPTO") issued U.S. Patent No.

22 9,565,159 (the "'149 patent") on February 7, 2017. *Id.*, ¶ 8. Brilliant Mobile filed the

23 application for the '149 patent with the USPTO on November 5, 2019 as application no.

24 10/072,418 (the "Application"). *Id.*, ¶ 9. After filing the Application, the named inventors

25 assigned their respective rights in the '149 patent to Brilliant Mobile. *Id.*, ¶ 10. As Brilliant

26 Mobile was the predecessor to Phoji, Phoji is now the sole owner of the '149 patent. *Id.*

27      **C.**     ***Phoji's Negotiation Attempt with Slack***.

28       In the Complaint, Plaintiff devotes substantial space detailing its communications with

Phoji concerning the '149 patent.  *See* Compl. ¶¶ 14–32.  Phoji first formed a belief that Plaintiff was potentially infringing on the '149 patent in early 2019.  Decl., ¶ 46.  In response to the potential infringement, Phoji's counsel, Lommen Abdo, P.A. ("Lommen")[1], sent an initial correspondence to Plaintiff on June 24, 2019 (the "June 24 Letter"), in which it suggested that "Slack would find it beneficial to license Phoji, Inc. intellectual property" and welcomed the "opportunity to discuss the potential licensing agreement and terms" with Plaintiff.  *Id.*, ¶ 47; *see also* Compl., ¶ 16.  Plaintiff responded on June 26, 2019, stating that it did not believe that Plaintiff needed a license to the '149 patent.  Decl., ¶ 48.

After that date, until approximately February 20, 2020, Phoji and Plaintiff exchanged at least seven letters concerning the potential infringement and potential licensing arrangement. *Id.*, ¶ 49.  Throughout this negotiation process, Phoji remained committed to resolving the issue amicably though a licensing arrangement.  *Id.*, ¶¶ 49, 58.  In a letter, Phoji stated its position that "Slack infringes the claims of the '149 patent" and stated that it wanted to amicably resolve the situation and "remain[ed] open to discussing a potential licensing agreement with Slack."  *Id.*, ¶ 49; *see also* Compl., ¶ 17.    Phoji again reiterated its desire for a business solution and proposed terms of a licensing arrangement.  Decl., ¶ 50; *see also* Compl., ¶ 20.  On December 13, 2019, Phoji stated that it was "committed to directing its efforts toward seeking a reasonable business solution with Slack" and proposed terms of a licensing arrangement.  Decl., ¶ 51.

In its final letter to Plaintiff, Phoji stated that Phoji's efforts had "been aimed at trying to come to a business resolution" but those efforts have not been fruitful as "Slack has flatly refused to negotiate."  *Id.*, ¶ 52.  Plaintiff responded on February 20, 2020, stating in part that Plaintiff had "been engaged in good faith negotiations with Phoji since Phoji's initial correspondence." *Id.*, ¶ 53; *see also* Compl., ¶ 53.

As demonstrated by the above, these letters amounted to little more than Phoji attempting to negotiate a license arrangement with Plaintiff concerning the '149 patent.   Decl., ¶¶ 58–59. Plaintiff itself admitted in the Complaint that Plaintiff and Phoji "had been engaged in good faith

---

[1] Lommen, acting for and on behalf of Phoji, sent the letters to Plaintiff.  Additionally, Lommen sent emails to and had telephonic meetings with Plaintiff.

1  negotiations" since Phoji's initial correspondence.  Compl., ¶ 32.

2       In addition to the letters, Phoji and Plaintiff exchanged emails and had telephonic

3  meetings.  Decl., ¶¶ 54–55; *see also* Compl., ¶¶ 18, 22–30.  Specifically, Mr. Christensen had at

4  least five telephonic meetings with Plaintiff's Director of Intellectual Property, Cyndi Wheeler.

5  Decl., ¶ 54.  Phoji participated in all of the telephonic meetings with Plaintiff and Plaintiff's

6  representatives from outside the District.  *Id.*, ¶ 55.  Moreover, from the period from June 24,

7  2019 to present, Mr. Christensen has not traveled to California for business.  *Id.*, ¶ 56; *cf.*

8  Compl., ¶ 46.  In response to an email from Plaintiff, dated January 24, 2020 and a telephonic

9  meeting with Plaintiff, on January 29, 2020, Phoji created and sent a claim chart concerning the

10 '149 patent to Plaintiff.  Phoji sent the claim chart at Plaintiff's insistence and in an attempt to

11 further the licensing negotiations; it was not sent to threaten litigation.  Decl., ¶ 57.  Beyond the

12 notice letter sent to Plaintiff and ensuing communications regarding a potential licensing

13 arrangement, all of Phoji's contacts with Plaintiff concerned commercialization of the '149

14 patent.  Phoji has not engaged in any enforcement activities with any company in the District or

15 California.  *Id.*, ¶¶ 22, 59.  Phoji's interactions with Plaintiff concerned licensing negotiations.

16     **D.**    *Phoji's Commercialization Activities*.

17      Both prior and subsequent to issuance of the '149 patent, Phoji has engaged in numerous

18 activities, all meant to commercialize the '149 patent and build a successful company.  These

19 commercialization efforts include, but are not limited to: (i) making the App available for

20 download; (ii) developing pilot programs with brands as part of a proof-of-concept strategy,

21 which strategy is widely used in the technology space; and (iii) participating in various

22 promotional and marketing activities.  *Id.*, ¶¶ 23–45.  The commercialization activities are

23 described in detail below.

24      To commercialize the '149 patent and make it available to users in all locations, Phoji

25 made the App available on the Apple App Store and the Google Play App Store.  *Id.*, ¶¶ 25, 27.

26 The Apple App Store and the Google Play App Store are two of the largest distributors of mobile

27 applications.  As such, to get the '149 to reach as many users as possible, Phoji had to make the

28 App available on both platforms.  Prior to making the App available on the Apple App Store and

the Google Play App Store, Phoji entered into various agreements with Apple Inc., the owner of the Apple App Store, which is headquartered in California ("Apple"). *Id.*, ¶ 26. Phoji signed an Apple Developer Program License Agreement with Apple and also appointed Apple to be its agent regarding marketing and delivery of the App. Phoji does not recall entering into any agreements with Google LLC ("Google") regarding putting the App on the Google Play App Store. *Id.*, ¶ 28.

Phoji does not have a business relationship with either Apple or Google and has not interacted with representatives of either Apple or Google. *Id.*, ¶ 29. Phoji does not have any exclusive licensing agreements with either Apple or Google related to the '149 patent. *Id.*, ¶ 23. Any agreements entered with either Apple or Google were one-sided agreements, drafted in a "take it or leave it" manner. *Id.*, ¶ 29. All of Phoji's interactions with Apple and Google through the Apple App Store and the Google Play App Store, respectively, have been directed at commercialization of the '149 patent. *Id.*, ¶ 45.

Phoji is in the early stages of commercializing the '149 patent and is currently doing proof-of-concept activities. *Id.*, ¶ 39. In an effort to achieve proof-of-concept, Phoji has run pilot programs with various brands wherein Phoji wanted to demonstrate what its product could do. *Id.*, ¶ 40. Phoji did not have a business relationship with any companies or brands it included in its pilot program. *Id.* Rather, Phoji used certain brands to show how the '149 patent could interact with those brands' social media. *Id.* Phoji's proof-of-concept pilot program included brands such as Jamba Juice on the Escondido Promenade ("Jamba Juice") and Seatninja, which offered app-based reservations at Stone Brewing World Bistro & Gardens ("Seatninja"). *Id.*, ¶ 41.

As part of the proof-of-concept pilot program and initial commercialization efforts, Phoji created sample social media posts for Jamba Juice and Seatninja using the '149 patent. *Id.*, ¶ 40. These sample posts were neither requested nor posted by Jamba Juice or Seatninja. *Id.*, ¶ 42. Rather, the posts were a marketing tool for Phoji to show the capabilities of the '149 patent. *Id.*, ¶ 42. Phoji does not, nor has it ever had, a business relationship with either Jamba Juice or Seatninja. *Id.*, ¶ 43. Phoji has never commenced an enforcement action against either Jamba

1   Juice or Seatninja nor does it have any agreements relating to the '149 patent, including license

2   agreements, with Jamba Juice or Seatninja.  *Id.*, ¶¶ 22, 44–45.  All of Phoji's interactions with

3   Jamba Juice and Seatninja were directed at Phoji's commercialization efforts of the '149 patent.

4   *Id.*, ¶ 45.

5          Phoji and its agents have undertaken various general marketing and promotion activities

6   meant to increase awareness of the '149 patent and the App.   Through Mr. Christensen's

7   relationship with its founder, Michael Becker, Phoji has previously been connected to mCordis, a

8   strategic mobile and connected marketing advisory and educational marketing services company.

9   *Id.*, ¶¶ 30–32.  In 2017, prior to issuance of the '149 patent, in an effort to promote Phoji and

10   build brand awareness Phoji was a charter member of the Connected Marketer Institute, an

11   organization also founded by Mr. Becker.  *Id.*, ¶ 33.  Other than attending a single Connected

12   Marketer Summit (described below), Phoji did not do anything else in its role as a charter

13   member of the Connected Marketer Institute.  *Id.*  Moreover, although Phoji entered into a basic

14   consulting agreement with mCordis, that agreement was focused on Phoji's attendance at the

15   Connected Marketer Summit.  *Id.*, ¶ 32.  Phoji has not engaged the services of mCordis beyond

16   that basic agreement.  *Id.*

17          Also prior to the issuance of the '149 patent, Mr. Christensen attended the Connected

18   Marketer Summit, which was a conference wherein brand marketers shared perspectives of their

19   experience with connected marketing.  *Id.*, ¶ 36.  At the Connected Marketer Summit, Phoji did

20   not present or display any material as Phoji was still an early-stage company.   *Id.*, ¶ 37.  To

21   Phoji's knowledge, the Connected Marketer Summit was held only one time.  *Id.*, ¶ 38.

22   Furthermore, the Connected Marketer Institute and mCordis are no longer operational in the

23   United States as Mr. Becker split with his business partner in late 2017.  *Id.*, ¶ 31.  Mr.

24   Christensen has also participated in a remote video interview with Mr. Becker as part of the

25   mCordis Mobile Insights, which was posted on the website of Identity Praxis, Inc., an entity run

26   by Mr. Becker that is wholly unrelated to Phoji.  *Id.*, ¶ 34.  Phoji does not have a business

27   relationship with Identity Praxis.  *Id.*; *cf.* Compl., ¶ 49.

28          None of the above marketing and promotional activities involved enforcement of the '149

1    patent.  All of the above activities were focused on commercialization of the '149 patent and

2    building brand awareness.

3         Missing from Plaintiff's allegations and exhibits is any indication that Phoji's tenuous

4    connections to this District concern the enforcement of the '149 patent.  That is because they do

5    not exist.

6    **IV.    PLAINTIFF FAILS TO ESTABLISH GENERAL JURISDICTION BECAUSE**

7    **PHOJI DOES NOT HAVE CONTINUOUS AND SYSTEMATIC CONTACTS WITH**

8    **THIS DISTRICT**.

9         The standard for establishing general personal jurisdiction is "fairly high."  *Alzheimer's*

10   *Inst. of Am. v. Comentis, Inc.*, No. C 09-2772 VRW, 2009 WL 10672148, at *2 (N.D. Cal. Nov.

11   13, 2009) (citation omitted).  For a court to exercise general personal jurisdiction over a non-

12   resident defendant, the defendant must engage in "continuous and systematic general business

13   contacts" which approximate physical presence in the forum state.  *Helicopteros Nacionales de*

14   *Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  For a corporate defendant, "[t]he standard is

15   met only by *continuous corporate operations* within a state that are thought *so substantial* and of

16   such a nature as to justify suit against the defendant on causes of action arising from dealings

17   entirely distinct from those activities." *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th

18   Cir. 2011) (emphasis added) (internal citations and quotations omitted).

19        Factors indicating such continuous corporate operations include "[l]ongevity, continuity,

20   volume, economic impact, physical presence, and integration into the state's regulatory or

21   economic markets." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006).

22   On the other hand, general personal jurisdiction is not proper when the non-resident defendant

23   has only "sporadic and insubstantial contacts" with the forum state.  *Campbell Pet Co. v. Miale*,

24   542 F.3d 879, 884 (Fed. Cir. 2008).

25        In *Helicopteros*, the Supreme Court held that the non-resident corporate defendant was

26   not subject to general personal jurisdiction as it did not have a place of business and had never

27   been licensed in the forum, despite the fact that its contacts with the forum state included sending

28   a representative to the forum to negotiate a contract, accepting checks from a bank in the forum

1    state, purchasing goods and services from a manufacturer in the forum state, and sending

2    personnel to the manufacturer's facilities for training.  *See Helicopteros*, 466 U.S. at 416.

3         Similarly, in *Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, the Federal Circuit

4    relied on the decision in *Helicopteros*, finding that the non-resident defendant's contacts with the

5    forum, California, were "sporadic and insubstantial" and insufficient to establish general

6    personal jurisdiction in the forum.  566 F.3d 1012, 1017–18 (Fed. Cir. 2009).  The court held

7    that, similar to the defendant in *Helicopteros*, the defendant had no actual physical presence or

8    license to do business in California.  *Id.*  In *Autogenomics*, the defendant had various sporadic

9    contacts with California, including: (a) licensing negotiations, both via email and in person,

10   regarding the patent at issue in the case; (b) entering into non-exclusive licenses with companies

11   based in California; (c) entering into an agreement with a California-based business; (d)

12   attending three conferences/tradeshows in California over a four-year period; (e) selling products

13   to a California company; and (f) publishing an article on a website that is accessible to California

14   users.  *Id.*, 1014–16.  The court nevertheless held that "[a]ll of the contacts alleged by [plaintiff],

15   even in combination, are insufficient evidence of continuous and systematic contacts."  *Id.*, 1018.

16        Similar to the holdings of both *Helicopteros* and *Autogeonmics*, Plaintiff cannot meet the

17   Supreme Court's and Federal Circuit's high bar for asserting general personal jurisdiction over

18   Phoji.  Plaintiff attempts to use Phoji's limited, sporadic, and tenuous contacts with California as

19   proof that Phoji should be subject to general personal jurisdiction.  For example, Plaintiff asserts

20   that Phoji sent letters and emails and had telephone calls with Plaintiff, attended a conference in

21   California, does business with California companies such as Apple, Google, Jamba Juice, and

22   Seatninja, and is a charter member of a marketing organization based in California.  Compl., ¶¶

23   33–51.  However, none of the aforementioned contacts are continuous and systematic.  In fact,

24   they are sporadic and insubstantial at best.

25        Phoji is not based in California and it does not have an office, headquarters, or mailing

26   address in California.  Decl., ¶ 12.  Phoji does not have any employees located in California.  *Id.*,

27   ¶ 13.  None of Phoji's marketing, development, or other business activities are explicitly directed

28   at California.  *Id.*, ¶¶ 14–15.  All of Phoji's offices are located in Minnesota.  *Id.*, ¶ 11.  Phoji

1   does not own, lease, or maintain any property in California.  *Id.*, ¶ 17.  It does not pay taxes in

2   California, nor does it maintain a bank account in California.  *Id., ¶¶* 15, 18.  It has not done

3   substantial business with any California entity.  *Id.*, ¶ 15.

4          Absent any "continuous and systematic" contacts in California, there is no basis for this

5   Court to assert general personal jurisdiction over Phoji.  As no such contacts exist, general

6   personal jurisdiction over Phoji is improper.

7   **V.     PLAINTIFF CANNOT ESTABLISH SPECIFIC JURISDICTION BECAUSE**

8   **PHOJI HAS NO CONTACTS WITH THIS DISTRICT, PHOJI HAS NOT**

9   **PURPOSEFULLY DIRECTED ACTIVITIES TOWARD THIS FORUM, AND THE**

10  **EXERCISE OF JURISDICTION OVER PHOJI WOULD BE UNREASONABLE**.

11         Plaintiff also cannot make the prima facie case to establish specific personal jurisdiction

12  over Phoji.  In considering whether to assert specific personal jurisdiction over a non-resident

13  defendant, courts apply a three-prong minimum contacts test.  The court considers (a) whether

14  the defendant purposefully directed its activities at residents of the forum; (b) whether the claim

15  arises out of or relates to the defendant's activities in the forum; and (c) whether, even if the first

16  two prongs are met, assertion of personal jurisdiction is reasonable and fair.  *NexLearn*, 859 F.3d

17  at 1376.

18         **A.     *Phoji's Letters Are Not Sufficient to Confer Specific Personal Jurisdiction.***

19         In a declaratory judgment action, only those activities directed at *enforcing patent rights*

20  within the forum may be used to establish specific personal jurisdiction.  *Avocent*, 552 F.3d at

21  1332 ("The relevant inquiry for specific personal jurisdiction purposes then becomes to what

22  extent has the defendant patentee *purposefully directed* such enforcement activities at residents

23  of the forum, and the extent to which the declaratory judgment claim *arises out of* or *relates to*

24  those activities." (emphasis added) (internal quotations omitted)).  Moreover, for a court to

25  exercise specific personal jurisdiction, the patentee's contacts with the forum must "relate in

26  some material way to the enforcement or the defense of the patent."  *Maxchief Investments Ltd.*

27  *v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1138 (Fed. Cir. 2018) (internal quotations omitted).  In

28  patent declaratory judgment actions, the alleged injury tends to arise out of the threat of

1    infringement, typically communicated through notice letters and the patentee may have little

2    contact with the forum beyond that letter.  *Avocent*, 552 F.3d at 1333.

3         The Federal Circuit has repeatedly held that "[notice] letters alone do not suffice to create

4    personal jurisdiction."  *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360

5    (Fed. Cir. 1998); *see also Petzila, Inc. v. Anser Innovation LLC*, 620 F. App'x 941, 943 (Fed.

6    Cir. 2015); *Breckenridge*, 444 F.3d at 1363; *Autogenomics*, 566 F.3d at 1019.  The court in *Red*

7    *Wing* further held that "[a] patentee should not subject itself to personal jurisdiction in a forum

8    solely by informing a party who happens to be located there of suspected infringement."  *Red*

9    *Wing*, 148 F.3d at 1361.  The *Red Wing* court further held that offers to license a patent within

10   such notice letters do not, by themselves, confer specific personal jurisdiction.  *Id.*  ("An offer to

11   license is more closely akin to an offer for settlement of a disputed claim rather than an arms-

12   length negotiation in anticipation of a long-term continuing business relationship.").

13        Here, Phoji corresponded and had telephone calls with Plaintiff concerning its rights to

14   the '149 patent and an attempt to negotiate a licensing agreement with Plaintiff.  Decl., ¶¶ 46–59.

15   Phoji's first correspondence with Plaintiff on June 24, 2019, was an attempt to negotiate a

16   licensing arrangement with Plaintiff.  *See id.*, ¶ 47.  (Phoji suggested that "Slack would find it

17   beneficial to license Phoji, Inc. intellectual property" and welcomed the "opportunity to discuss

18   the potential licensing agreement and terms" with Slack.).  Phoji renewed this attempt in the

19   follow-up correspondence with Plaintiff.  *See id.*, ¶¶ 49–52; *see also* Compl., ¶¶ 16, 20–21, 27–

20   31.  This licensing attempt continued via telephone calls with Plaintiff and its representatives.

21   *See* Decl., ¶¶ 54–55; *see also* Compl., ¶¶ 18, 25, 30.

22        During the period that these letters were being sent, none of Phoji's representatives

23   traveled to California to discuss the enforcement of the '149 patent.  *See* Decl., ¶¶ 55–56; *cf.*

24   Compl., ¶ 46; *Xilinx*, 848 F.3d at 1354 (finding that personal jurisdiction was proper because the

25   patentee sent cease-and-desist letters *and* visited plaintiff in the forum state).  Furthermore, from

26   the period June 24, 2019 to February 28, 2020, when this case was filed, it was Phoji's steadfast

27   position that it wanted to negotiate a license agreement with Plaintiff and do everything possible

28   to avoid litigation.  Decl., ¶ 58.  In response to Plaintiff's comments, Phoji sent a claim chart to

1    Plaintiff in an attempt to further the license negotiation.  *Id.*, 57.

2         As such, the June 24 Letter and ensuing correspondence Phoji sent to Plaintiff and

3    conversations Phoji had with Plaintiff in an attempt to negotiate a licensing arrangement do not

4    subject Phoji to specific personal jurisdiction in this District.

5         **B.      *Phoji's Other Contacts With This District Do Not Relate to the Enforcement or***

6    ***Defense of the '149 Patent and Are Not Sufficient to Confer Specific Personal Jurisdiction.***

7         Due to the "policy considerations unique to the patent context," in order for a court to

8    exercise personal jurisdiction over a non-resident defendant, "there must be *other activities*

9    directed at the forum and related to the cause of action besides the letters threatening an

10   infringement suit."  *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202, 1206 (Fed. Cir.

11   2003) (emphasis added) (internal quotations omitted).

12        The Federal Circuit has clarified what "other activities" a non-resident defendant must

13   engage in beyond sending notice letters.  These "other activities" include instances where the

14   defendant "has a relationship with an exclusive licensee headquartered or doing business in the

15   forum state" that contemplates "a relationship beyond royalty or cross-licensing payment, such

16   as granting both parties the right to litigate infringement cases or granting the licensor the right to

17   exercise control over the licensee's sales or marketing activities."  *Breckenridge*, 444 F.3d at

18   1366.   In sum, the Federal Circuit has held that the "other activities" must "relate to the

19   *enforcement or the defense of the validity* of the relevant patents."  *Avocent*, 552 F.3d at 1334

20   (emphasis in original).

21        Although exclusive licensing agreements and similar undertakings imposing enforcement

22   obligations on the patentee are examples of "other activities" that support the finding of specific

23   personal jurisdiction against a non-resident defendant, commercialization activity is not an "other

24   activity" which would confer specific personal jurisdiction.  *Id.*, 1335; *see also Petzila*, 620 F.

25   App'x at 943 ("A defendant patentee's own commercial activities are irrelevant to this special

26   test because they are not materially related to patent enforcement or defense.").   "What the

27   patentee makes, uses, offers to sell, sells, or imports is of no real relevance to the enforcement or

28   defense of a patent, because the federal patent laws do not create any affirmative right to make,

1   use, or sell anything." *Avocent*, 552 F.3d at 1335 (internal quotations omitted).

2       As discussed above and based on long-standing precedent, notice letters, by themselves,

3   are insufficient to confer specific personal jurisdiction. The letters must be accompanied by

4   some other activity which "relate[s] in some material way to the enforcement or the defense of

5   the patent." *Maxchief*, 909 F.3d at 1138 (internal quotations omitted). In its Complaint, Plaintiff

6   takes a throw-everything-at-the-wall-and-see-what-sticks approach, describing many different

7   and attenuated "contacts" that Phoji has with California. Barren from Plaintiff's Complaint,

8   however, is a showing of *how* any of Phoji's alleged contacts with California, beyond the

9   correspondence and conversations with Plaintiff and its representatives, *relate to the enforcement*

10   *or the defense of the '149 patent*. That is because Plaintiff is unable to do so.

11       The June 24 Letter and ensuing correspondence to Plaintiff and participating in telephone

12   calls with Plaintiff and its representatives were attempts at negotiating a license arrangement

13   with Plaintiff. Decl., ¶¶ 22, 59. At no point did Phoji threaten litigation. *Id.*, ¶ 58.

14       Phoji has made its App available on the Apple App Store and the Google Play App Store.

15   *Id.*, ¶¶ 25, 28. In putting the App on both platforms, Phoji did not enter a business relationship

16   with either Apple or Google. *Id.*, ¶ 29. It does not have personal relationships with any of Apple

17   or Google's representatives. *Id.* The agreements that Phoji entered with Apple and any

18   agreement Phoji may have entered with Google cannot, in any way, be considered an exclusive

19   licensing agreement, a licensing agreement, or any other type of agreement relating to the

20   enforcement or defense of the '149 patent. *Id.*, ¶¶ 26, 28–29. To offer the App on the Apple

21   App Store, Apple required Phoji to sign the Apple Developer Program License Agreement (the

22   "Agreement"). *Id.*, ¶ 26. The Agreement did not concern the licensing of the '149 patent to

23   Apple. *Id.* Rather, the Agreement was a license agreement of Apple's *own software* to enable

24   Phoji to use Apple's software to develop the App on the Apple App Store. *Id.* Phoji's contacts

25   with Apple and Google therefore relate to Phoji's efforts to commercialize the '149 patent, not

26   enforce or defend it.

27       Contrary to Plaintiffs allegations in the Complaint, Phoji has done no business with

28   California entities Jamba Juice and Seatninja. *Id.*, ¶ 43; *cf.* Compl., ¶¶ 50–51. As described

1    above, as part of its proof-of-concept pilot program, Phoji created sample social media posts

2    using Jamba Juice and Seatninja.   Decl., ¶¶ 39–41.   Phoji did this of its own accord to

3    demonstrate the capabilities of the '149 patent.  *Id.*, ¶ 42.   These sample social media posts were

4    a marketing tool for Phoji, they were not posted on Jamba Juice's or Seatninja's social media

5    pages. *Id.*   Phoji did not have a business relationship with either Jamba Juice or Seatninja.  *Id.*, ¶

6    43.   Phoji did not enter into any exclusive licensing agreements, licensing agreements, or any

7    other agreement relating to the enforcement or defense of the '149 patent.  *Id.*, ¶ 44.   All of

8    Phoji's activities regarding Jamba Juice and Seatninja related to the commercialization of the

9    '149 patent. *Id.*, ¶ 44.

10         Plaintiff points to Phoji's other sporadic and insubstantial contacts with the District to

11   prove jurisdiction is proper.   Compl., ¶¶ 45–49.   Plaintiff argues, without proof, that "Phoji

12   conducts business with mCordis." *Id.*, ¶ 47.   Plaintiff's assertion is meritless and contradicted by

13   Phoji's CEO.   Decl., ¶¶ 30–32.   Other than paying mCordis a small amount to attend the

14   Connected Marketer Summit, Phoji does not have a business relationship with mCordis.  *Id.*, ¶

15   32.  mCordis was founded by Mr. Becker, an unpaid advisor of Phoji.  *Id.*, ¶¶ 30–31.   Through

16   its relationship with Mr. Becker, Phoji has participated in other general marketing and business

17   promotion activities led by Mr. Becker.   *Id.*, ¶¶ 33–38.   These include Phoji's one-time

18   attendance at the Connected Marketer Summit, Phoji's inclusion as a charter member of the

19   Connected Marketer Institute (which has required nothing more than Phoji's attendance at the

20   Connected Marketer Summit), and Mr. Christensen's appearance on a remote video interview

21   with Mr. Becker for one of Mr. Becker's unrelated entities, Identity Praxis.  *Id.*   Upon

22   information and belief, mCordis, the Connected Marketer Institute, and the Connected Marketer

23   Summit, are no longer operational.  *Id.*, ¶¶ 31, 33, 38.   All of the above activities were general

24   promotional and marketing activities undertaken by Phoji to commercialize the '149 patent and

25   build awareness.  *Id.*, ¶ 45.   These activities did not, in any way, relate to the enforcement or

26   defense of the '149 patent. *Id.*

27         Phoji does not have any contacts with this District that materially relate to the

28   enforcement or defense of the '149 patent beyond the correspondence and telephone calls with

Plaintiff related to license negotiation.   Plaintiff has therefore failed to prove that Phoji "purposefully directed its activities at residents of the forum" or that this action "arises out of or relates to those activities." *Breckenridge*, 444 F.3d at 1363.  Plaintiff has failed to make its prima facie case in proving that Phoji has minimum contacts with this jurisdiction.  As such, this Court lacks specific personal jurisdiction over Phoji.

> **C.**     ***Even If This Court Finds Specific Personal Jurisdiction Over Phoji, It Should Decline to Exercise Specific Personal Jurisdiction Because Doing So Would Be Unfair and Unreasonable.***

Because Plaintiff has failed to make a prima facie case that this Court has specific personal jurisdiction over Phoji, there is no need to consider the third prong, whether exercise of specific personal jurisdiction is reasonable and fair.  *See Adobe Sys. Inc. v. Tejas Research, LLC.*, No. C-14-0868 EMC, 2014 WL 4651654, at *3 (N.D. Cal. Sept. 17, 2014) (finding if the plaintiff is unable to prove minimum contacts, "the Court need not address [plaintiff's] arguments that the exercise of personal jurisdiction in this action would comport with the concepts of fair play and substantial justice."); *Alzheimer's Inst.*, 2009 WL 10672148, at *4 (holding if the plaintiff fails to establish minimum contacts, "it is unnecessary to evaluate whether the . . . assertion of personal jurisdiction would be reasonable and fair.").

But even if the Court finds that Plaintiff has met its burden of proving that minimum contacts exist, the analysis does not end there.  *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996).  Should this Court find that minimum contacts exist, the court must consider the third prong of the specific jurisdiction analysis, that of assuring that personal jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe*, 326 U.S. at 316.  To do this, the Court must balance the following factors:  (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.  *Inamed*, 249 F.3d at 1363.

A balance of the above factors demonstrates that this District's exercise of personal

1  jurisdiction over Phoji would be unreasonable.  It would be unduly burdensome and expensive to
2  force Phoji to litigate in California.  Phoji is headquartered in Minnesota.  Decl., ¶ 3.  None of its
3  employees are located in California.  *Id.*, ¶ 13.  Materials regarding the '149 patent are in
4  Minnesota.  *Id.*, ¶¶ 3, 4.  Phoji is a small, early-stage company and, as such, would be placed at a
5  disadvantage if forced to expend resources litigating this matter in California.  *Id.*, ¶ 39.
6  Conversely, Plaintiff is a company that is "used around the world" and employs "nearly 1000
7  employees."  *See* Compl., ¶ 2.  A company such as Plaintiff has the resources to litigate
8  anywhere in the country.

9         Given the lack of connection between Phoji and this District, jurisdiction would not
10 comport with the notions of fair play and substantial justice and would therefore be
11 unreasonable.  As Phoji is a small company, all of the material concerning the '149 patent is in
12 Minnesota.  Further, Plaintiff has the resources to litigate in any state.  As such, the third prong
13 of the specific jurisdiction analysis supports dismissal.

14 **VI.      CONCLUSION**

15        This Court lacks personal jurisdiction over Phoji because Phoji is not a resident of this
16 District and lacks continuous and systematic contacts with this District.  Further, Phoji does not
17 have any contacts with this District materially related to the enforcement and defense of the '149
18 patent.  Beyond the notice letter sent to Plaintiff and ensuing communications regarding a
19 potential licensing arrangement, all of Phoji's contacts with this District concerned only
20 commercialization of the '149 patent.  For these reasons, as detailed above, this Court cannot
21 assert personal jurisdiction over Phoji.  Accordingly, Phoji respectfully requests that the Court
22 grant its Motion to Dismiss and dismiss this case with prejudice.

23
24
25
26
27
28

{11558864.1 }

1   Dated:  May 18, 2020.

2                                              **DeWitt LLP**

3                                              By:    */s/ Elijah B. Van Camp*
                                                       Elijah B. Van Camp (SBN 252289)
4                                                      Two East Mifflin Street
                                                       Suite 600
5                                                      Madison, WI 53703
                                                       evc@dewittllp.com
6                                                      Telephone:  (608) 255-8891
                                                       Facsimile:  (608) 252-9243
7

8                                              *Attorneys for Defendant Phoji, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT PHOJI, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**
Case No. 3:20-cv-01509-EMC

**PROOF OF SERVICE**

**FRCP 5**

I, Julie L. Wilcox, the undersigned, am over the age of 18 years and not a party to this action.  I am employed with the law firm of DeWitt LLP, whose address is Two East Mifflin Street, Suite 600, Madison, WI 53703.

On May 18, 2020, I served the interested parties in this action with the following documents:

**Defendant Phoji, Inc.'s Notice of Motion and Motion to Dismiss**
**Declaration of Jon Christensen**
**Defendant Phoji, Inc.'s Certification of Interested Entities or Persons**
**[Proposed] Order Granting Defendant Phoji, Inc.'s Motion to Dismiss**

as follows:

| *[X] **BY ELECTRONIC TRANSMISSION**:* | echen@desmaraisllp.com<br>amodi@desmaraisllp.com<br>rthorne@desmaraisllp.com<br>**Attorneys for Plaintiff** |
|---|---|
| I caused such document to be electronically transmitted via United States District Court, Northern District of California, which is then printed and maintained with the original documents in our office. | |

*[ ]      **BY MAIL:**  I deposited such envelope in the mail at Madison, Wisconsin.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firms' practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Madison, Wisconsin in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

( ) placing ( ) the original ( ) a true copy thereof enclosed in the sealed envelopes addressed as follows:

Emily H. Chen
Desmarais LLP
101 California Street
San Francisco, CA 94111

Ameet A. Modi
Ryan G. Thorne
Desmarais LLP
230 Park Avenue
New York, NY 10169
*Attorneys for Plaintiff Slack Technologies, Inc.*

{11558864.1 }

-22-

**DEFENDANT PHOJI, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**
Case No. 3:20-cv-01509-EMC