EMILY H. CHEN (Bar No. 302966)
echen@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, California 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901

AMEET A. MODI (admitted *pro hac vice*)
amodi@desmaraisllp.com
RYAN G. THORNE (admitted *pro hac vice*)
rthorne@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

*Attorneys for Plaintiff Slack Technologies, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Slack Technologies, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Phoji, Inc., <br><br> Defendant. | Case No. 3:20-cv-01509-EMC <br><br> **SLACK TECHNOLOGIES, INC.'S OPPOSITION TO PHOJI, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** <br><br> Date:  August 6, 2020 <br> Time:  1:30 p.m. <br> Ctrm:  Courtroom 5, 17th Floor <br>        450 Golden Gate Avenue <br>        San Francisco, California 94102 <br> Judge: Hon. Edward M. Chen |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ..................................................................................................................2

    I.       Phoji Repeatedly Sought To Enforce The '149 Patent Against Slack In This
District..........................................................................................................2

    II.      Phoji Maintains Regular, Ongoing Contacts With California Corporations
Concerning The '149 Patent. ........................................................................3

LEGAL STANDARDS ........................................................................................................4

ARGUMENT .......................................................................................................................6

    I.       This Court Has Specific Personal Jurisdiction Over Phoji In This Action............6

         A.      Phoji Purposefully Directed Its Enforcement Activities At Slack In
This District. ....................................................................................6

         B.      This Case Arises From And Relates To Phoji's Enforcement
Activities. .......................................................................................10

         C.      This Court's Exercise Of Jurisdiction Over Phoji Is Reasonable And
Fair. ................................................................................................11

    II.      If This Court Concludes That A *Prima Facie* Showing Of Personal
Jurisdiction Has Not Been Established, Slack Should Be Granted Limited
Jurisdictional Discovery...............................................................................13

CONCLUSION...................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Akro Corp. v. Luker*,
45 F.3d 1541 (Fed. Cir. 1995).....................................................................................13

*Apple Inc. v. Fundamental Innovation Sys. Int'l LLC*,
No. 19-cv-00638, 2019 WL 1923106 (N.D. Cal. Apr. 30, 2019).......................................7

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
552 F.3d 1324 (Fed. Cir. 2008)...............................................................................8, 13

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
137 S. Ct. 1773 (2017)................................................................................................8

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)........................................................................................... passim

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
788 F.2d 535 (9th Cir. 1986) ......................................................................................14

*Calix Networks, Inc. v. Wi–LAN Inc.*,
No. C-09-06038, 2010 WL 3515759 (N.D. Cal. Sept. 8, 2010) .....................................14

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066, 1073 (9th Cir. 2011) ....................................................................5, 6, 14

*Dayton Superior Corp. v. Gen. Techs., Inc.*,
No. 3:09-cv-114, 2009 WL 4250034 (S.D. Ohio Nov. 20, 2009) ...................................16

*Elecs. for Imaging, Inc. v. Coyle*,
340 F.3d 1344 (Fed. Cir. 2003).......................................................................8, 11, 12

*Executone of Columbus, Inc. v. Inter-Tel, Inc.*,
No. 2:06-cv-126, 2006 WL 3043115 (S.D. Ohio Oct. 4, 2006) ......................................16

*Focht v. Sol Melia S.A.*,
No. C-10-0906 EMC, 2010 WL 3155826 (N.D. Cal. Aug. 9, 2010)................................14

*Genetic Implant Sys., Inc. v. Core-Vent Corp.*,
123 F.3d 1455 (Fed. Cir. 1997).........................................................................9, 11, 16

*Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*,
933 F.3d 1302 (Fed. Cir. 2019).........................................................................8, 11, 13

*Goes Int'l, AB v. Dodur Ltd.*,
No. 3:14-cv-05666-LB, 2015 WL 5043296 (N.D. Cal. Aug. 26, 2015)............................9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)....................................................................................................4

*Hanson v. Denckla*,
357 U.S. 235 (1958)..................................................................................................13

*Hanson v. Denckla*,
357 U.S. 235 (1958)....................................................................................................6

*Haris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,*
  328 F.3d 1122 (9th Cir. 2003) ....................................................................14

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
  466 U.S. 408 (1984)...............................................................................5, 14

*Inamed Corp. v. Kuzmak,*
  249 F.3d 1356 (Fed. Cir. 2001)...................................................5, 9, 11, 13

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945).....................................................................................4

*Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC,*
  910 F.3d 1199 (Fed. Cir. 2018)............................................................ passim

*Laub v. U.S. Dep't of the Interior,*
  342 F.3d 1080 (9th Cir. 2003) ...................................................................14

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) .......................................................................7

*LSI Indus. Inc. v. Hubbell Lighting, Inc.,*
  232 F.3d 1369 (Fed. Cir. 2000)..........................................................5, 14, 16

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007).....................................................................................12

*Medtronic, Inc. v. Mirowski Family Ventures, LLC,*
  134 S. Ct. 843 (2014)...................................................................................12

*Orchid Biosciences, Inc. v. St. Louis Univ.,*
  198 F.R.D. 670 (S.D. Cal. 2001) .................................................................14

*Petzila, Inc. v. Anser Innovation LLC,*
  620 F. App'x 941 (Fed. Cir. 2015) ................................................................9

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
  148 F.3d 1355 (Fed. Cir. 1998).........................................................8, 11, 13

*Sams v. Yahoo! Inc.,*
  713 F.3d 1175 (9th Cir. 2013) .......................................................................7

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico,*
  563 F.3d 1285 (Fed. Cir. 2009).....................................................................5

*Viam Corp. v. Iowa Exp.–Imp. Trading Co.,*
  84 F.3d 424 (Fed. Cir. 1996)........................................................................12

*Wells Fargo & Co. v. Wells Fargo Express Co.,*
  556 F.2d 406 (9th Cir. 1997) .......................................................................14

*Xilinx, Inc. v. Papst Licensing GmbH & Co.,*
  848 F.3d 1346 (Fed. Cir. 2017)............................................................ passim

**Statutes**

Cal. Civ. Proc. Code § 410.10 ............................................................................5

**INTRODUCTION**

For more than eight months, Defendant Phoji, Inc. ("Phoji") harangued Plaintiff Slack Technologies, Inc. ("Slack") with baseless claims of infringement in an attempt to force Slack to license U.S. Patent No. 9,565,149 ("the '149 patent"). Slack repeatedly explained to Phoji why it did not infringe the '149 patent. Nonetheless, Phoji continued to accuse Slack of infringement in letters, emails, and telephone meetings. To remove the threat of a lawsuit hanging over its business indefinitely, San Francisco-based Slack filed a complaint for declaratory judgment in this Court.

Now Phoji responds by disavowing its own ongoing contacts with this forum. For nearly five years, Phoji has distributed its self-described "patented app"—*i.e.*, an app allegedly covered by the same '149 patent at issue in this case—through California. Phoji has sent its representatives to at least one marketing conference in this forum; Phoji interviewed with a California corporation to market Phoji's allegedly patent-embodying products; and Phoji's own marketing materials explicitly reference actual physical locations in California to capitalize on California's reputation. Phoji has long sought to associate its "patented app" with the cachet of California's technology industry. Yet now, called to account in California, Phoji denies its own actions.

Phoji also asserts in its brief and in a sworn declaration that it never "threaten[ed] litigation" against Slack. (Dkt. 21 (hereinafter "Br.") at 17; *see also* Dkt. 23 (hereinafter "Christensen Decl.") ¶ 58.) That assertion is readily disproven—Phoji's pre-suit written communications to Slack, cited in Slack's complaint, clearly demonstrate otherwise—and it reasonably calls into question the veracity of Phoji's other assertions in its attempt to avoid this Court's jurisdiction:

- Dec. 13, 2019 letter to Slack, containing Phoji's assertion that it had "little choice but to consider alternative paths to address Slack's infringement of the '149 patent" absent a license agreement (Dkt. 1 (hereinafter "Compl.") ¶ 21; Chen Decl., Ex. A);

- Jan. 29, 2020 email to Slack, threatening the prospect of "a formal legal process" and "a different plan for this process" absent resolution (Compl. ¶ 30; Chen Decl., Ex. B);

- Feb. 13, 2020 letter to Slack, stating that Phoji was "committed to taking the necessary steps to protect" its intellectual property rights and that it would be "forced to litigate

its infringement claims" absent Slack's agreement to a license (Compl. ¶ 31; Chen Decl., Ex. C).

Slack respectfully requests that this Court reject Phoji's revisionism, find that Slack has made the requisite *prima facie* showing that Phoji is subject to personal jurisdiction in this action, and deny Phoji's motion to dismiss.

## BACKGROUND

This action arises from Phoji's repeated attempts to enforce the '149 patent against Slack in this District. The '149 patent issued on February 7, 2017, from a November 5, 2013 application and is currently assigned to Phoji. (Compl. ¶¶ 11–14.) In addition to Phoji's numerous contacts with Slack in this forum to enforce its patent, Phoji has repeatedly availed itself of the opportunities created by doing business with the numerous technology leaders headquartered in this District.

## I.    Phoji Repeatedly Sought To Enforce The '149 Patent Against Slack In This District.

Beginning in June 2019, Phoji repeatedly threatened to enforce its '149 patent against Slack. (Compl. ¶¶ 16–32.) Over next the eight months—until Slack sought relief from this Court on February 28, 2020—Phoji (or its agents) sent Slack (or its representatives) no less than five letters and two emails and held no less than seven telephone meetings with Slack to assert that Slack's "utilization and distribution of the Slack Emoji" infringed the '149 patent. (*Id.*)

Slack is a local corporation; its principal place of business is in San Francisco. (*Id.* ¶ 2.) Phoji directed all of these letters, emails, and telephone meetings to Slack's San Francisco headquarters. (*Id.* ¶¶ 16–32.)

Phoji's communications to Slack in this District were not solely concerned with licensing the '149 patent (*cf.* Br. at 20); Phoji threatened to ***sue*** Slack. On December 13, 2019, in its fourth letter, Phoji demanded that a license be "executed by December 31, 2019" or that Phoji would have "little choice but to consider alternative paths to address Slack's infringement of the '149 patent." (Chen Decl., Ex. A; Compl. ¶ 21.) During a January 7, 2020 telephone meeting with Slack representatives in San Francisco, Phoji's representative explained that its Board of Directors considered litigation to be the next step if Slack did not license the '149 patent. (Compl. ¶ 25.) Following a January 29, 2020 telephone meeting with Slack representatives in San Francisco, Phoji sent an email that same day to

Slack in San Francisco and again intimated it would begin "a formal legal process" if Slack continued to refuse to license the patent.  (Chen Decl., Ex. B; Compl. ¶ 30.)  And on February 13, 2020, Phoji again sent a letter to Slack's San Francisco headquarters, threatening that Phoji was "committed to taking the necessary steps to protect" its intellectual property and that it would be "forced to litigate its infringement claims," enclosing a claim chart purporting to demonstrate infringement of the '149 patent.  (Chen Decl., Ex. C; Compl. ¶¶ 30–31.)  In response to Phoji's threats, Slack consistently explained that it does not infringe the '149 patent.  (Compl. ¶¶ 16–32.)  Phoji's threats did not relent, so Slack sought relief from this Court on February 28, 2020.

## II.     Phoji Maintains Regular, Ongoing Contacts With California Corporations Concerning The '149 Patent.

Separate from its contacts with Slack in this District, Phoji also makes regular, ongoing contacts in California concerning the '149 patent, including with respect to its mobile application, which Phoji regularly describes as practicing the '149 patent.  (*See* Compl. ¶ 43 (Phoji describing its mobile application as "patented" by the '149 patent.); *see also, generally*, Br. (repeatedly referring to Phoji's "patented app").)  Phoji does not deny most of these contacts in its opening brief, and indeed admits that all of these contacts were specifically tied to ***the '149 patent*** via business relationships in California.  (Br. at 9–12.)

For example, since at least September 30, 2015, Phoji has distributed its mobile applications through contractual relationships with Apple and Google, each of whose principal place of business is within this District.  (Compl. ¶¶ 34–42.)  Phoji has continually maintained these contacts since at least 2015.  (*See, e.g.*, *id.* ¶¶ 35, 38 (records indicate regular app updates and yearly license registration).)  In doing so, Phoji designated Apple its agent regarding marketing and delivery of the iOS version of its mobile app, which Phoji asserts is covered by the '149 patent.  (*Id.* ¶ 37.)  In doing so, Phoji has also—at least twice—consented to jurisdiction in California concerning its "patented app."  (*Id.* ¶¶ 37, 41.)  Apple and Google are the only distributors of the iOS and Android versions of Phoji's mobile apps.  (*See generally id.* ¶¶ 33–43.)  Slack is unaware, and Phoji has not identified, any other parties authorized to distribute Phoji's self-described "patented" mobile app.  (*See id.*)

Phoji employees have also physically entered California to "commercialize the '149 patent." A Phoji representative attended a marketing conference in January 2017 in San Francisco, and based on pre-suit communications, Slack believes that Jon Christensen, Phoji's President and CEO, traveled to Los Angeles in January 2020.  (*Id.* ¶¶ 45–46.)   There are likely numerous other times that Mr. Christensen or other Phoji executives have entered California to "commercialize the '149 patent." Slack simply has not had access to that information.

Phoji also conducts business with a marketing company named mCordis based in San Francisco and, indeed, was a charter member of mCordis's The Connected Marketer Institute.  (*Id.* ¶¶ 47–48.)  Another California corporation, Identity Praxis, Inc., distributes an interview with Phoji's CEO, Jon Christensen, on its website.  (*Id.* ¶ 49.)  Mr. Christensen himself characterizes the "purpose of this interview" as "market[ing] Phoji and . . . commercializ[ing] the '149 patent."  (Christensen Decl. ¶ 35.)

Finally, Phoji's website displays example product advertisements from Jamba Juice and Seatninja, and both advertisements explicitly refer to California locations.  (Compl. ¶¶ 50–51.)  Phoji characterizes these advertisements as proofs of concept that do not reflect business relationships.  (Christensen Decl. ¶¶ 41–43.)  Even accepting those allegations as true, that only further demonstrates that Phoji *itself* chose to advertise its "patented" product *using California locations*.  Phoji singled out California "to commercialize the '149 patent."  (*Id.* ¶ 44.)

In short, Phoji has repeatedly, consistently availed itself of opportunities created by business arrangements with companies that call this District home, and Phoji itself has characterized these contacts with the District as tied directly to the '149 patent at issue in this case.  (Br. at 7–12; Christensen Decl. ¶¶ 44–45.)

## LEGAL STANDARDS

A federal court may exercise personal jurisdiction over a non-resident defendant who has had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Personal jurisdiction takes two forms: specific and general.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  General jurisdiction arises when a defendant

maintains "continuous and systematic general business contacts with the forum," without regard to whether the cause of action arises from those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984).  On the other hand, specific jurisdiction manifests when the litigation arises out of or relates to activities that the non-resident defendant "purposefully directed" to residents of the forum," even if those contacts are isolated and sporadic.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citation omitted).  A defendant may also identify other factors "to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  *Id.* at 476 (citations omitted).

Federal Circuit law applies to the jurisdictional issue here because this case only involves a patent non-infringement claim.  *See Xilinx, Inc. v. Papst Licensing GmbH & Co.*, 848 F.3d 1346, 1352 (Fed. Cir. 2017).  As to general jurisdiction, neither the Supreme Court nor the Federal Circuit has outlined a specific test for analyzing whether a defendant's activities within the state are sufficiently "continuous and systematic."  *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009).  Instead, the "court must look at the facts of each case." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

As to specific jurisdiction, a "court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute permits service of process and the assertion of personal jurisdiction comports with due process." *Xilinx, Inc.*, 848 F.3d at 1352.  Here, California's long-arm statute "is coextensive with federal due process requirements," so "the two inquiries collapse into [one]: whether jurisdiction comports with due process." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (citing Cal. Civ. Proc. Code § 410.10); *Xilinx, Inc.*, 848 F.3d at 1353 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).  For this inquiry, the Federal Circuit applies "a three-factor test: '(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair.'" *Xilinx, Inc.*, 848 F.3d at 1353 (quoting *Inamed*, 249 F.3d at 1360).  "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Id.*

1    Slack "need[s] only to make a *prima facie* showing" that Phoji is "subject to personal

2    jurisdiction." *Xilinx, Inc.*, 848 F.3d at 1352.  The court must "accept the uncontroverted allegations

3    in [Slack's] complaint as true" and must "resolve any factual conflicts" in Slack's favor.  *Id.*;

4    *CollegeSource, Inc.*, 653 F.3d at 1073 (applying the same standards).  Because Phoji's pre-suit

5    correspondence is critical to Slack's declaratory judgment action, and there is no factual dispute as to

6    their contents, the court may properly consider the appearance and content of the correspondence at

7    this stage in the litigation.

8                                                **ARGUMENT**

9    **I.    This Court Has Specific Personal Jurisdiction Over Phoji In This Action.**

10    Phoji's contacts in this District meet all three factors demonstrating specific personal

11    jurisdiction.  First, by repeatedly threatening Slack with litigation in an attempt to force a license, Phoji

12    has "'purposefully directed' its enforcement activities at [a] resident[] of the forum." *Xilinx, Inc.*,

13    848 F.3d at 1353.  At the same time, Phoji has "purposefully availed itself of the privilege of

14    conducting activities within the forum State" at least by exclusively distributing its self-described

15    "patented app" through agreements with residents Apple and Google. *Id.* (quoting *Hanson v. Denckla*,

16    357 U.S. 235, 253 (1958)).  Second, this action "arises out of or relates to" Phoji's licensing and

17    enforcement efforts within the District. *Xilinx, Inc.*, 848 F.3d at 1353.  And third, this Court's exercise

18    of personal jurisdiction over Slack is "reasonable and fair." *Id.*

19           **A.    Phoji Purposefully Directed Its Enforcement Activities At Slack In This District.**

20    Phoji has repeatedly directed efforts to enforce and license the '149 patent to this forum.  Over

21    the eight months preceding this action, Phoji sent Slack at least five letters and two emails and held at

22    least seven telephone meetings with Slack regarding Slack's alleged infringement of the '149 patent.

23    (Compl. ¶¶ 16–32; *see supra* at 2–3.)  And since at least 2015, Phoji has exclusively distributed its

24    allegedly patent-embodying mobile apps through Apple and Google virtual stores.  (*Id.* ¶¶ 34–42; *see*

25    *supra* at 3–45.)  Contrary to Phoji's protestations otherwise, these actions seek to enforce and license

26    the '149 patent—and are of the type previously held by the Federal Circuit to form the basis of specific

27    jurisdiction.

28

First, Phoji's five enforcement letters and two enforcement emails alone could provide this Court jurisdiction.  *See, e.g.*, *Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1206 (Fed. Cir. 2018) (finding specific jurisdiction based on defendants' letters to multiple plaintiffs).  Phoji argues that its written communications cannot support jurisdiction because, according to Phoji, they were not directed to "enforcing" the '149 patent. (Br. at 14–15.)  But at least three of its written communications demonstrate otherwise.  In a December 13, 2019 letter, Phoji intimated that, absent a license, it would have "little choice but to consider alternative paths to address Slack's infringement of the '149 patent."  (Compl. ¶ 21; Chen Decl., Ex. A.)  In a January 29, 2020 email, Phoji warned that it would begin "a formal legal process" if Slack did not license the patent. (Compl. ¶ 30; Chen Decl., Ex. B.)  And in a February 13, 2020 letter, Phoji threatened that it would "tak[e] the necessary steps to protect" its intellectual property, that it would be "forced to litigate its infringement claims," and it attached a claim chart purportedly showing infringement.  (Compl. ¶ 31; Chen Decl., Ex. C.)[1]  Phoji threatened litigation in at least one telephone meeting as well.  (*Id.* ¶ 25.) Even if Phoji had not misrepresented the facts, Phoji's argument rests on a distinction unsupported by the law: Phoji has not identified any precedent from the Federal Circuit that distinguishes between letters threatening litigation and letters solely seeking to license a patent.  No such distinction exists. *See, e.g.*, *Jack Henry & Assocs., Inc.*, 910 F.3d at 1204 (alternatively characterizing letters as "charges of infringement" and "patent licensing activities"); *Apple Inc. v. Fundamental Innovation Sys. Int'l LLC*, No. 19-cv-00638, 2019 WL 1923106, at *3 (N.D. Cal. Apr. 30, 2019) ("The claim charts that Apple and Fundamental exchanged while discussing the validity of Fundamental's patents would fall under enforcement activity.")

Phoji also contends that its enforcement letters alone cannot confer jurisdiction without more activities. (Br. at 15.)  But the Federal Circuit has twice rejected this precise argument.  In *Jack Henry & Associates*, the plaintiff, like Phoji here, "cites *Red Wing Shoe* and *Avocent* for the proposition that patent enforcement letters can never provide the basis for jurisdiction in a declaratory judgment

---

[1] On a motion to dismiss, this court may "consider documents that were not physically attached to the complaint where the documents' authenticity is not contested, and the plaintiff's complaint necessarily relies on them." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  No dispute exists concerning the authenticity of Phoji's pre-suit correspondence with Slack, which Slack expressly cited and quoted in its complaint.

action." 910 F.3d at 1206 (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998), *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333 (Fed. Cir. 2008)).  The Federal Circuit rejected the argument, explaining that "*Red Wing Shoe* and *Avocent* did not create such a rule."  *Id.*; *see also Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1312 (Fed. Cir. 2019) ("This argument fails. As we have expressly stated, '*Red Wing Shoe* and *Avocent* did not create such a [bright-line] rule.'").  "[D]oing so," the court reasoned, "would contradict the [Supreme] Court's directive to 'consider a variety of interests' in assessing whether jurisdiction would be fair."  *Jack Henry & Assocs., Inc.*, 910 F.3d at 1206  (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017)).

In any event, while an errant enforcement letter may not be sufficient to confer jurisdiction, Phoji's actions more closely parallel the facts of *Jack Henry & Associates*, where the Federal Circuit affirmed a finding of jurisdiction over the patentee based on numerous enforcement letters directed into the forum.  910 F.3d at 1206.  Phoji has subjected itself to this Court's jurisdiction because its numerous communications far exceed merely informing Slack of its patent rights—Phoji's numerous letters and emails constituted concerted, ongoing enforcement and licensing activities.

Second, Phoji has held at least seven telephone meetings with Slack in this District regarding the '149 patent.  In *Xilinx*, the Federal Circuit found personal jurisdiction arose when the patentee sent multiple enforcement letters to the plaintiff in California and traveled to California—once—to discuss the alleged patent infringement and potential licensing.  848 F.3d at 1354.  Phoji cannot disregard its multiple meetings with Slack merely because Phoji did not physically enter California during the meetings.  (*See* Br. at 15–16.)  As the Supreme Court has observed, "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."  *Burger King*, 471 U.S. at 476.

Accordingly, the Federal Circuit has regularly recognized that telephone meetings "are significant in the personal jurisdiction calculus even though [the patentee] was not physically present in California when he made these communications."  *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351 (Fed. Cir. 2003).  A patentee's efforts to license its patents "although accomplished through

telephone and mail," are nonetheless "activities 'purposefully directed' at residents of California." *Inamed Corp.*, 249 F.3d at 1362.  Indeed, the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction." *Burger King*, 471 U.S. at 476.  And the Federal Circuit recently affirmed that principle when the court "found jurisdiction based only on letters and phone calls initiated from out-of-state." *Jack Henry & Assocs., Inc.*, 910 F.3d at 1205. Whereas the patentee in *Xilinx* purposefully directed its activities to California through two enforcement letters and one meeting, Phoji has directed five enforcement letters, multiple emails, and at least seven meetings into this District.  Those actions establish jurisdiction.

Third, for more than four years, Phoji has exclusively distributed its mobile app—which it repeatedly describes as being covered by the '149 patent—through Apple and Google in this District. (*See, e.g.*, Br. at 7 ("patented app"); Br. at 9 ("[T]o get the '149 [patent] to reach as many users as possible, Phoji had to make the App available on both [the Apple and Google] platforms.").)  Phoji argues that its distribution arrangements through Apple and Google cannot subject it to jurisdiction because, Phoji contends, the distribution arrangements are not about enforcing or defending the '149 patent.  (Br. at 16–17.)  But, again, the Federal Circuit has rejected Phoji's argument: "The appointment of a distributor to sell a product **covered by a patent** is analogous to a grant of a patent license.  Such an action conveys an implied license to the distributor, thereby surrendering the patentee's right to exclude the distributor under the patent." *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (emphasis added); *cf. Petzila, Inc. v. Anser Innovation LLC*, 620 F. App'x 941, 944 (Fed. Cir. 2015) (finding that a distribution agreement did not provide retail rights for a "patented product," but reaffirming *Genetic Implant Systems* precedent "that giving exclusive distribution and retail rights in the forum state for a patented product constituted sufficient 'additional activity'").  The fact that Phoji's self-described "patented app" is distributed online does not distinguish Phoji from the patentee in *Genetic Implant Systems*.  "[S]tores are not just physical any more: they are virtual." *Goes Int'l, AB v. Dodur Ltd.*, No. 3:14-cv-05666-LB, 2015 WL 5043296, at *11 (N.D. Cal. Aug. 26, 2015).  In *Goes International*, the court found specific jurisdiction based on the defendant's distribution of allegedly infringing products via the Apple and Google app stores.

1   *Id.* ("[E]ven in virtual marketplaces, acts can be and are aimed at the forum when the customers are in

2   the forum and the revenues are earned (or diverted) in the forum.").

3   Indeed, by Phoji's own description, ***all*** of its contacts with California concern the '149 patent.

4   (*See* Br. at 9 ("Phoji has engaged in numerous activities, all meant to commercialize the

5   '149 patent.").)  These contacts not only include its licensing efforts and litigation threats against Slack

6   and its distribution of its self-described "patented app" (Br. at 7, 9–10) through Google and Apple, but

7   also "various promotional and marketing activities."  (Br. at 9.)  Phoji's participation in a marketing

8   conference in San Francisco and its charter membership in a marketing organization (*see* Compl.

9   ¶¶ 45, 47–48) were done "to share Phoji's early prototypes" and "concern[ed] Phoji's

10  commercialization efforts of the '149 patent."  (Christensen Decl. ¶ 37, 45.)  The participation of

11  Phoji's CEO in an interview for California-based Identity Praxis (*see* Compl. ¶ 49) was also "to

12  commercialize the '149 patent."  (Christensen Decl. ¶¶ 34–35.)  And Phoji's own "proof-of-concept

13  strategy" included "sample social media posts" for Jamba Juice and Seatninja—using actual California

14  locations—were also "efforts to commercialize the '149 patent."  (Christensen Decl. ¶¶ 39, 41, 44;

15  Compl. ¶¶ 50–51.)  Phoji offers no reason to presume that Mr. Christensen's January 2020 business

16  trip to California (*see* Compl. ¶ 46)—during its licensing efforts against Slack—was not also "to

17  commercialize the '149 patent."   Phoji's efforts to distinguish between "enforcement" and

18  "commercialization" betray the obvious:  ***all*** of Phoji's contacts with California were made to exercise

19  its monopoly granted by the '149 patent—*i.e.*, to license or enforce its patent rights.

20  Thus, Phoji has repeatedly, and for many years, directed activities to this forum concerning the

21  enforcement and licensing of the '149 patent, including its distribution arrangements through Apple

22  and Google, seven telephone meetings, five enforcement letters, and multiple emails to enforce its

23  patent against Slack.

24  **B.    This Case Arises From And Relates To Phoji's Enforcement Activities.**

25  This action indisputably "arises out of or relates to" Phoji's contacts in this District.  *Xilinx,*

26  *Inc.*, 848 F.3d at 1353.  First, Slack's claims for declaratory judgment arise directly out of Phoji's

27  enforcement efforts against Slack.  "There can be no dispute" that Phoji's numerous infringement

28  letters, emails, and telephone meetings to and with Slack "satisf[y] this factor."  *Inamed Corp.*,

249 F.3d at 1362.  "[C]ease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts)."  *Xilinx, Inc.*, 848 F.3d at 1354 (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)).

Second, Phoji is simply wrong that its enforcement efforts against Slack cannot form the basis for jurisdiction without some "other activity" related to Slack's claim.  (*See* Br. at 16–17.)  As explained above, the Federal Circuit rejected this same argument last year: "'*Red Wing Shoe* and *Avocent* did not create such a [bright-line] rule.'"  *Genetic Veterinary Scis., Inc.*, 933 F.3d at 1312 (quoting *Jack Henry*, 910 F.3d at 1206).

Third, as described above, Phoji has repeatedly engaged in "other activities" in California, activities that Phoji concedes were all specifically tied to the '149 patent.  (*See supra* at 8–10.)  Most significantly, Phoji has entered agreements with Apple and Google, residents of this District, for the distribution of the iOS and Android versions of its mobile app—one that Phoji repeatedly describes as embodying the '149 patent.  (*See, e.g.*, Br. at 7, 9–10.)  By entering into those agreements, Phoji has granted permission to—*i.e.*, licensed—Apple and Google to distribute an application that Phoji itself describes as covered by the '149 patent.  *Genetic Implant Sys.*, 123 F.3d at 1458 ("The appointment of a distributor to sell a product covered by a patent is analogous to a grant of a patent license.").  Exclusive distribution arrangements, combined with infringement letters, provide sufficient minimum contacts for the Court to exercise personal jurisdiction over Phoji.  *See id.* at 1458–59 (finding jurisdiction based on distributor's activities within forum).  Thus, Phoji's numerous infringement letters, emails, and telephone meetings "taken together with . . . [its] successful efforts to commercialize by sublicensing the ['149] patent satisfy the 'minimum contacts' element."  *Genetic Veterinary Scis., Inc.*, 933 F.3d at 1311.

**C.      This Court's Exercise Of Jurisdiction Over Phoji Is Reasonable And Fair.**

Phoji—not Slack—bears the burden to show that this Court's exercise of personal jurisdiction over Phoji would not be reasonable and fair.  *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351–52 (Fed. Cir. 2003).  It is not a light burden, and Phoji does not and cannot meet it.

Once a plaintiff has made a *prima facie* "showing of minimum contacts," then "the reasonableness prong is typically satisfied."  *Xilinx, Inc.*, 848 F.3d at 1355.  "Where a defendant who

purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a **compelling case** that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477 (emphasis added).  The Supreme Court has "identified five considerations relevant to the reasonableness analysis: . . . [1] 'the burden on the defendant,' [2] 'the forum State's interest in adjudicating the dispute,' [3] 'the plaintiff's interest in obtaining convenient and effective relief,' [4] 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and [5] the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Xilinx, Inc.*, 848 F.3d at 1355 (citing *Burger King*, 471 U.S. at 477).

Phoji ignores four of the five considerations, (*see* Br. at 20), presumably because all weigh heavily in Slack's favor.  California has "definite and well-defined interests in commerce and scientific development," *Xilinx, Inc.*, 848 F.3d at 1356 (quoting *Viam Corp. v. Iowa Exp.–Imp. Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996)), and "California has a substantial interest in protecting its residents from unwarranted claims of patent infringement," *Elecs. for Imaging*, 340 F.3d at 1352, and in "providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473.

Likewise, Slack "indisputably has an interest in protecting itself from patent infringement by obtaining relief 'from a nearby federal court' in its home forum." *Xilinx, Inc.* 848 F.3d at 1356; *Elecs. for Imaging, Inc.*, 340 F.3d at 1352 (similar).  As recognized by the Supreme Court, declaratory judgment actions in patent cases critically grant accused infringers, like Slack, a determination of non-infringement or invalidity that provide freedom to operate.  *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007).

Jurisdiction over Slack's claims "in California would also result in an efficient resolution of the controversy." *Xilinx, Inc.*, 848 F.3d at 1356.  And finally, no conflicts exist between the interests of California, Minnesota, or any other state, because "the same body of federal patent law would govern" the claims. *Xilinx, Inc.*, 848 F.3d at 1356; *Elecs. for Imaging*, 340 F.3d at 1352.

As to the one consideration that Phoji does address, Phoji has failed to present a "compelling case" that jurisdiction in this Court would be unreasonable or unfair. *Burger King*, 471 U.S. at 477. Phoji argues that it would be burdened litigating in this District because Phoji is headquartered in Minnesota, relevant patent materials are located in Minnesota, and Phoji is a "small" company that would be "disadvantage[d]" by the expenses of litigation in a foreign court. (Br. at 20.) But more than sixty years ago, the Supreme Court recognized that modern technology alleviates those purported burdens: "[P]rogress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome." *Hanson v. Denckla*, 357 U.S. 235, 250–51 (1958); *see also Genetic Veterinary Scis., Inc.*, 933 F.3d at 1311–12 (citing *Hanson* in finding no substantial burden on defendant). This has only become truer since 1958—and more evident over the last few months of the coronavirus pandemic.

The Federal Circuit has repeatedly cautioned that cases where the fairness analysis may defeat otherwise constitutional personal jurisdiction are "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Xilinx, Inc.*, 848 F.3d at 1356 (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995)); *Inamed Corp.*, 249 F.3d at 1363 (same). Phoji has not met its burden to show that this case is such a "rare situation." Accordingly, this Court's exercise of personal jurisdiction over Phoji is fair and reasonable.

## II.     If This Court Concludes That A *Prima Facie* Showing Of Personal Jurisdiction Has Not Been Established, Slack Should Be Granted Limited Jurisdictional Discovery.

In its complaint, Slack has detailed Phoji's numerous contacts with Slack to enforce the '149 patent and Phoji's distribution of its "patented app" through this forum. These allegations sufficiently establish a *prima facie* showing of specific personal jurisdiction over Phoji in this District. As described above, Phoji's counterarguments insist on oversimplifications of Federal Circuit law and bright-line rules where none exist. *See Genetic Veterinary Scis., Inc.*, 933 F.3d at 1312 ("*Red Wing Shoe* and *Avocent* did not create such a [bright-line] rule.") (citation omitted). Phoji's counterarguments also rely on factual assertions—like its assertion that it never threatened litigation against Slack—that are readily contradicted by contemporaneous documents, which were cited in

1    Slack's complaint.  (Compl. ¶¶ 21, 30, 31; *see also* Chen Decl., Exs. A–C;).  At the pleading stage,

2    those purportedly disputed facts are resolved in Slack's favor.  *Xilinx, Inc.*, 848 F.3d at 1352;

3    *CollegeSource, Inc.*, 653 F.3d at 1073.

4            But to the extent the Court does not find that it has specific personal jurisdiction in this action,

5    Phoji's readily disproven assertions critically highlight the need for limited jurisdictional discovery.

6    Jurisdictional "discovery should ordinarily be granted where pertinent facts bearing on the question of

7    jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v.*

8    *U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Local*

9    *No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)); *see also Haris Rutsky & Co. Ins. Servs.,*

10   *Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) ("[A] remand will be necessary to

11   allow [plaintiff] the opportunity to develop the record.").  Given the minimal burden of a *prima facie*

12   showing of jurisdiction on the merits, "a lesser burden is required in order for plaintiff to obtain

13   jurisdictional discovery in the first place." *Focht v. Sol Melia S.A.*, No. C-10-0906 EMC, 2010 WL

14   3155826, at *2 (N.D. Cal. Aug. 9, 2010); *see also Calix Networks, Inc. v. Wi–LAN Inc.*, No. C-09-

15   06038, 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010) ("[P]laintiff need not make out a *prima*

16   *facie* case of personal jurisdiction before it can obtain jurisdiction discovery.").  Rather, Phoji "must

17   meet the relatively high burden of establishing that 'it is clear that further discovery would not

18   demonstrate facts sufficient to constitute a basis for jurisdiction.'" *Orchid Biosciences, Inc. v. St.*

19   *Louis Univ.*, 198 F.R.D. 670, 674–75 (S.D. Cal. 2001) (quoting *Wells Fargo & Co. v. Wells Fargo*

20   *Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1997)).  Phoji cannot meet that high burden.

21           First, Slack should have an opportunity to pursue document discovery reflecting any travel and

22   correspondence into California by Phoji employees or executives in the last five years.  (*See, e.g.*,

23   Compl. ¶ 46 (alleging Mr. Christensen entered California for business as recently as January 2020).)

24   This Court's exercise of general personal jurisdiction would be appropriate if Phoji has engaged in

25   "continuous and systematic" contacts with California.  *LSI Indus. Inc.*, 232 F.3d at 1375 (citing

26   *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414–16).  By contrast, if Phoji has not

27   engaged in regular contacts with California (as it avers), it would not be unduly burdensome for Phoji

28   to comply with such a request.

Second, Slack should have an opportunity to obtain documents and deposition testimony concerning the full scope of Phoji's efforts to license or enforce the '149 patent in California, such as documents referring to the '149 patent (or Phoji's app, which it describes as patented by the '149 patent) directed to any third party located in California, *see Jack Henry & Assocs., Inc.*, 910 F.3d at 1206 (jurisdiction based on defendants' enforcement letters to numerous forum residents), and documents reflecting travel made to or from California related to the '149 patent or Phoji's app.  *See Xilinx, Inc.*, 848 F.3d at 1354 (jurisdiction based on enforcement letters and one in-forum visit).  For example, Mr. Christensen asserts that "Phoji has not granted any exclusive licenses to any individual or entity concerning the '149 patent," (Christensen Decl. ¶ 23), but that does not foreclose non-exclusive licenses in California.  Mr. Christensen also swears that "Phoji has not directly or explicitly targeted users and brands in California" and that "none of Phoji's marketing, development, or other business activities are explicitly directed at the state of California."  (*Id.* ¶¶ 14–15.)  But Phoji's own website demonstrates otherwise: As detailed in Slack's complaint, Phoji explicitly references California locations in its Jamba Juice and Seatninja advertisements.   (Compl. ¶¶ 50–51.) Mr. Christensen himself admits that Phoji used California locations for its "sample social media" "marketing." (Christensen Decl. ¶¶ 41–42.)  Mr. Christensen further concedes that he engaged in an interview—publicly posted (Compl. ¶ 49)—with the chief of California-based Identity Praxis to "market Phoji and to commercialize the '149 patent" and that he attended a marketing conference in California "to share Phoji's early prototypes." (Christensen Decl. ¶¶ 34–35, 37.)  Additionally, given Phoji's aggressive attempts to force a license from Slack—and its characterization of those attempts to this Court as mere "commercialization of the '149 patent" (*see* Br. at 9)—it is plausible that Phoji targeted other companies within California's technology hubs with similar "commercialization" efforts.

Third, Slack also should have an opportunity to pursue discovery regarding Phoji's distribution and sales within California—facts pertinent to both general and specific jurisdiction.  As described above, since at least 2015, Phoji has distributed the iOS and Android versions of its mobile apps through and within California.  Because Phoji distributes its apps through contracts with California-based Apple and Google, all of its mobile app distribution goes through California.  Jurisdictional

discovery would likely demonstrate that a significant share of Phoji's mobile app distributions occur within California.  The Federal Circuit and district courts applying Federal Circuit law have repeatedly found personal jurisdiction established where a defendant, like Phoji, has a distribution network and ongoing sales within the forum.  *See, e.g.*, *LSI Indus. Inc.*, 232 F.3d at 1375 (general jurisdiction based on sales and "distributorship network" in the forum state); *Genetic Implant Sys., Inc.*, 123 F.3d at 1458 (finding specific jurisdiction based on implied license inherent in distributor relationship); *Dayton Superior Corp. v. Gen. Techs., Inc.*, No. 3:09-cv-114, 2009 WL 4250034, at *6 (S.D. Ohio Nov. 20, 2009) (finding *prima facie* showing of general jurisdiction based on "nationwide distribution network . . . that reaches into [the forum state]" and based on direct and indirect sales of products in the forum state); *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, No. 2:06-cv-126, 2006 WL 3043115, at *8 (S.D. Ohio Oct. 4, 2006) (similarly finding general jurisdiction based on "distributorship contracts" and sales within the forum state).

If the Court does not find it can exercise specific jurisdiction over Phoji based on Phoji's numerous contacts with Slack to enforce the '149 patent and Phoji's distributorships of its "patented app" through this forum, then the Court should alternatively rule that Slack may propound up to 10 document requests regarding Phoji's contacts with California, its licensing and enforcement efforts concerning the '149 patent, and relationships with distributors and retailers; and that Slack may take a seven-hour deposition of Phoji or Mr. Christensen.

### CONCLUSION

The Court should deny Phoji's motion to dismiss or, alternatively, grant Slack limited jurisdictional discovery.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  June 22, 2020                        */s/ Ameet A. Modi*

EMILY H. CHEN (Bar No. 302966)
echen@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, California 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901

AMEET A. MODI (admitted *pro hac vice*)
amodi@desmaraisllp.com
RYAN G. THORNE (admitted *pro hac vice*)
rthorne@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

*Attorneys for Plaintiff Slack Technologies, Inc.*