Elijah B. Van Camp (SBN 252289)
evc@dewittllp.com
DeWitt LLP
Two East Mifflin Street
Suite 600
Madison, WI 53703
Telephone:  (608) 252-9275
Facsimile:  (608) 252-9243
*Attorneys for Defendant Phoji, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

| | |
|---|---|
| Slack Technologies, Inc., | **CASE NO. 3:20-cv-01509-EMC** |
| Plaintiff, | **PHOJI, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |
| v. | |
| Phoji, Inc., | The Honorable Edward M. Chen |
| Defendant. | Hearing Date:  August 6, 2020<br>Time:  1:30 p.m.<br>Courtroom 5, 17th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

{11590862.4 }

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 2

    I.       INTRODUCTION. ........................................................................................................ 2

    II.     SLACK HAS FAILED TO PLEAD FACTS THAT, IF ASSUMED TRUE, SUPPORT GENERAL PERSONAL JURISDICTION OVER PHOJI. ....................... 2

    III.    SLACK HAS FAILED TO PLEAD FACTS THAT, IF ASSUMED TRUE, SUPPORT SPECIFIC PERSONAL JURISDICTION OVER PHOJI. ....................... 3

        A.    Phoji's Activities In The Forum Do Not Satisfy the Minimum Contacts Required To Confer Personal Jurisdiction. ................................................................ 3

        B.    Phoji's Other Contacts With This District Do Not Relate to Enforcement Or Defense Of The '149 Patent And Are Insufficient To Confer Specific Personal Jurisdiction. ............. 8

    IV.    JURISDICTIONAL DISCOVERY IS UNWARRANTED BECAUSE SLACK HAS NOT PROVEN IT CAN SUPPLEMENT ITS JURISDICTIONAL ALLEGATIONS THROUGH DISCOVERY. ................................................................ 10

    V.     CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Adobe Sys. Inc. v. Tejas Research, LLC*, No. C-14-0868 EMC, 2014 WL 4651654 (N.D. Cal. Sept. 17, 2014)..................................................................................................................8

*Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995) ...................................................................3

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009)........................11

*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008) ........................3, 9, 10

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356 (Fed. Cir. 2006).............3, 10

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ...............................................................2

*Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003).......................................6

*Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302 (Fed. Cir. 2019).8, 9

*Goes International, AB v. Dodur Ltd.*, No. 3:14-cv-05666-LB, 2015 WL 5043296 (N.D. Cal. Aug. 26, 2015)..................................................................................................................7

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000)........................11

*Inamed Corp. v. Kuzmak*, 249 F.3d 1356 (Fed. Cir. 2001) ............................................................6

*Jack Henry & Associates, Inc. v. Plano Encryption Technologies, LLC*, 910 F.3d 1199 (Fed. Cir. 2011) ...............................................................................................................................5, 8, 9

*Petzila, Inc. v. Anser Innovation LLC*, 620 F. App'x 941 (Fed. Cir. 2015) ...................................8

Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355 (Fed. Cir. 1998) ..........5, 9, 10

*Ross v. Skanska USA Civil W. Rocky Mountain Dist., Inc.*, No. C-13-5856 EMC, 2014 WL 806261 (N.D. Cal. Feb. 27, 2014) .................................................................................11

*Silent Drive, Inc. v. Strong Indus., Inc*., 326 F.3d 1194 (Fed. Cir. 2003).....................................10

*Square, Inc. v. Morales*, No. C 13-01431 SBA, 2013 WL 6199281 (N.D. Cal. Nov. 27, 2013)....8

*Terracom v. Valley Nat'l Bank*, 49 F.3d 555 (9th Cir. 1995).......................................................11

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406 (9th Cir. 1977)................................11

*ZTE (USA) Inc. v. AGIS Software Dev. LLC*, No. 18-CV-06185-HSG, 2019 WL 4345961 (N.D. Cal. Sept. 12, 2019) ........................................................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION.

The Court does not have personal jurisdiction over Defendant Phoji, Inc. ("Phoji").[1] Plaintiff Slack Technologies, Inc. ("Slack") bears the burden of establishing personal jurisdiction and it has not met that burden. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). Slack claims the letters and emails with Phoji were threats of litigation, despite the fact they do not contain any threats to litigate. To bolster its position, Slack attempts to recharacterize Phoji's remote and tenuous commercialization contacts with this District as patent enforcement activities. None of the facts identified by Slack are sufficient to satisfy the constitutional minimum contacts required to confer personal jurisdiction.

Lacking the necessary facts to support personal jurisdiction, Slack requests permission to conduct extensive jurisdictional discovery. Dkt. 29 at 13–16. Slack does not identify any information showing that such discovery would yield the evidence necessary to support personal jurisdiction. *See id*. Instead, Slack's request is based only on speculation. For example, without any citation or support, Slack asserts that "it is plausible that Phoji targeted other companies within California's technology hubs with similar 'commercialization' efforts." *Id*. at 15. This Court should deny Slack's request to conduct a fishing expedition in an attempt to confer personal jurisdiction on Phoji.

### II. SLACK HAS FAILED TO PLEAD FACTS THAT, IF ASSUMED TRUE, SUPPORT GENERAL PERSONAL JURISDICTION OVER PHOJI.

Slack's response brief does not attempt to establish facts to support general personal jurisdiction. *See generally id*. Because the burden of establishing jurisdiction rests on Slack, it has conceded the issue.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Phoji's Motion to Dismiss. Dkt. 21.

### III. SLACK HAS FAILED TO PLEAD FACTS THAT, IF ASSUMED TRUE, SUPPORT SPECIFIC PERSONAL JURISDICTION OVER PHOJI.

Slack also bears the burden of establishing that Phoji "purposefully directed" its activities at residents of the forum and that Slack's claim "arises out of or relates to" Phoji's activities directed at residents of the forum. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006); *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995). As with general jurisdiction, Slack again fails to meet its burden.

Even taking all of Slack's allegations as true, Phoji's purported contacts with California are insufficient to support specific personal jurisdiction. As such, this motion should be granted.

#### A. Phoji's Activities In The Forum Do Not Satisfy The Minimum Contacts Required To Confer Personal Jurisdiction.

In a declaratory judgment action, only those activities directed at *enforcing patent rights* within the forum may be used to establish specific personal jurisdiction. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) ("The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee *purposefully directed* such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim *arises out of* or *relates to* those activities.") (emphasis added) (internal quotations omitted). Slack ignores this legal requirement and instead focuses heavily on non-enforcement activities. Other than the communications between Phoji and Slack, Slack points to Phoji *commercialization activities* including making an App available on the Apple App Store and Google Play App Store, participating in marketing activities, and creating sample, proof-of-concept, social media posts. Slack's approach is improper.

As to the communications between the parties, Slack mischaracterizes Phoji's correspondence as "enforcement letters and enforcement emails." Dkt. 29 at 7. In reality, the goal of Phoji's initial correspondence on June 24, 2019 (the "June 24 Letter"), was to reach a "potential licensing agreement" with Slack. Dkt. 23 ¶ 47. In fact, throughout the written correspondence, Phoji never overtly threatened litigation. *Id.* ¶ 58. The excerpts selectively identified by Slack to support the notion that Phoji threatened litigation in "at least three of its written communications" are taken out of context. Dkt. 29 at 7.

Slack's first example comes from a December 13, 2019, letter (the "December 13 Letter"), which is the fourth letter Phoji sent after nearly six months of licensing negotiations. In it, Phoji reinforced its position that it remained "committed to directing its efforts toward seeking a reasonable business solution" and that it was "steadfast in its pursuit of a reasonable reconciliation on this matter." Dkt. 29-2. The above demonstrates that, in the December 13 Letter, Phoji was looking for a business solution rather than to threaten litigation.

The January 29, 2020 email (the "January 29 Email") likewise came after a months-long licensing negotiation. Contrary to Slack's representation, Phoji did not "warn[ ] that it would begin a 'formal legal process' if Slack did not license the patent." Dkt. 29 at 7. The language of the January 29 Email, omitted in Slack's brief, emphasized the need to continue negotiations:

> I still firmly believe there is great value for both of our organizations if we resolve this in a partnership and with a License Agreement. I also believe there is significant negative impact to both organizations if there is a formal legal process.
>
> I believe we should discuss a reasonable resolution; given Phoji has been and remains flexible with regard to the one time payment number.

Dkt. 29-3 at 2. These are not the words of a party threatening litigation—rather, they show Phoji's commitment to achieving a business solution.

The February 13, 2020 letter (the "February 13 Letter") further underscores Phoji's commitment to negotiating a licensing agreement. Although Phoji initially was reluctant to provide a claim chart, due to Slack's repeated requests for one, Phoji relented and sent one along "for the limited use of the current settlement discussions." Dkt. 29-4. In the February 13 Letter, Phoji again reiterated its desire "to come to a business resolution" and asked Slack if it was "interested in a business solution." *Id.* Ironically, after demanding a claim chart, Slack now argues that by providing it, Phoji intended to sue. Slack's position is belied by the facts.

Slack's characterization of Phoji's correspondence as "enforcement letters" and "enforcement emails" is not only incorrect, but its quotations used in support of the claim and its characterization of the claim chart as "proof" that Phoji was threatening litigation are taken out of context. Slack requested a claim chart, which Phoji eventually provided "for the limited use of the current settlement discussions between Phoji and Slack." *Id.* Phoji provided the claim

chart nearly eight months after its June 24 Letter and only provided it at Slack's request. *Id.*

Phoji sent letters and emails to negotiate a licensing agreement. Offers to license a patent within letters do not, by themselves, confer specific jurisdiction. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998). Here, the communications identified by Slack contain nothing more than attempts to negotiate a license agreement.

Slack contends that "enforcement" letters alone are enough to confer specific personal jurisdiction and cites a case whose facts are easily distinguishable. In *Jack Henry & Associates, Inc. v. Plano Encryption Technologies, LLC*, PET, a *patent assertion entity* whose "sole business is to enforce its intellectual property," sent letters to *eleven* different banks in the Northern District of Texas overtly threatening litigation and enclosing a claim chart. 910 F.3d 1199, 1201–02 (Fed. Cir. 2011). The letters contained statements that Defendant "actively licenses and enforces its patent rights" and touted litigation successes. *Id.* at 1202. In the next correspondence, PET again discussed its "successful history of enforcing the intellectual property rights of [its] clients against infringers." *Id.* at 1203. In finding that the eleven enforcement letters were sufficient to satisfy the first prong of the specific personal jurisdiction test, the *Jack Henry* court considered that PET's only business—both in and out of the district— was "licensing and litigating its patents." *Id.* at 1205. The court also noted that PET was registered to do business in Texas and was subject to general jurisdiction. *Id.*

Slack's assertion that the facts here "closely parallel the facts of *Jack Henry*" is wrong. Phoji is not a patent assertion entity and has never enforced its '149 patent or entered any licensing agreements regarding the '149 patent. Dkt. 23 ¶ 15. Unlike *Jack Henry*, Phoji directed its correspondence at *one resident* of the District, not 11, and only for the purpose of licensing negotiations. And Phoji is neither registered to do business in California nor subject to general jurisdiction.

Slack next attempts to characterize the telephone calls with Phoji as actions that should give rise to specific personal jurisdiction. Dkt. 29 at 8–9. The case Slack cites for that proposition is equally distinguishable. In *Electronics For Imaging, Inc. v. Coyle*, in addition to sending letters and participating in telephone calls, the defendant made trips to the district, sent

representatives to the district to meet with the plaintiff and engaged attorneys in the district. 340 F.3d 1344, 1351 (Fed. Cir. 2003). None of those facts apply to Phoji. In arriving at its decision, the court considered the "totality of [the above] contacts" in determining that specific personal jurisdiction was proper. *Id.*

In *Inamed Corp. v. Kuzmak*, cited by Slack, the court also considered "the combination of [defendant] Dr. Kuzmak's infringement letter and his [prior] negotiation efforts which culminated in four [prior] license agreements with Inamed" as sufficient to meet the first prong of the specific personal jurisdiction test. 249 F.3d 1356, 1362 (Fed. Cir. 2001). The court focused on the specific accusation of willful infringement in Dr. Kuzmak's letter, indicating "the treble damages and attorney fees to which he may be entitled in a successful infringement action against Inamed." *Id.* at 1361. None of Phoji's communications contained an infringement accusation like the one used by the defendant here. And there are no prior negotiations or licenses between Phoji and Slack.

Considering the totality of the contacts, it is clear Phoji has not directed any enforcement activities at the District. No Phoji representative ever traveled to meet with Slack in California. Phoji's phone calls were not directed at threatening Slack with litigation. Rather, they were directed at negotiating a single licensing agreement, which did not prove fruitful.

Third, Slack avers Phoji entered "distribution agreements" and "Phoji has exclusively distributed its mobile app . . . through Apple and Google." Dkt. 29 at 9–10. This is untrue, as shown by the Christensen Declaration. Phoji has not entered any distribution agreements or any exclusive arrangements with any party—either in or out of the District. Dkt. 23 ¶¶ 15, 23. Nowhere has Phoji asserted that placing the App on the Apple App Store or the Google Play App Store was part of a distribution agreement. And there is nothing exclusive about Phoji's decision to place the App on those platforms.

In placing the App on the Apple App Store, Phoji entered a one-sided "take it or leave it" contract with Apple which concerned the licensing by Phoji of *Apple's software*. *Id.* ¶¶ 26–29. To have the App on the Apple App Store, Phoji was required to accept the agreement's terms. Regardless of the title of the agreement between Phoji and Apple and any potential agreement

with Google, the notion that Apple and Google were appointed as distributors to *sell* the App is just plain wrong. Phoji pays no taxes in California because it has no revenue in California. *See id.* ¶ 18. So Slack is arguing that although there are no sales, Apple and Google are still distributors. This argument makes no sense. And Slack cites no cases in support of its novel theory that putting a mobile application on either the Apple App Store or the Google Play App Store is the same as a distribution agreement.

The closest Slack comes to finding support for this claim is a case where the Apple App Store is *directly relevant* to the litigation. *Goes International, AB v. Dodur Ltd.*, involved a copyright infringement claim in which the plaintiff had a game app with over 2.5 million downloads and associated ad revenue. No. 3:14-cv-05666-LB, 2015 WL 5043296, at *1 (N.D. Cal. Aug. 26, 2015). The court focused on a "national-contacts" jurisdictional analysis. *Id.* at *9. The defendants, a Swedish company, saw the Goes app, downloaded it from the Apple App Store, used Apple software to make a copy, uploaded it as their own, and intentionally made their infringing app available for distribution to U.S. consumers. *Id.* at *8. Thus, it was the defendant's own actions of uploading an infringing App onto the Apple App Store and intentionally choosing to make that app available to users in the United States that conferred personal jurisdiction. *Id.* at *8–11. The same is simply not true for Phoji. If simply placing an App in the Apple App Store or the Google Play App Store could establish personal jurisdiction over a U.S. defendant in a declaratory judgment action, as Slack suggests, some legal authority would support that position. But Slack fails to identify any case supporting its theory.

In an effort to show that somehow Phoji has engaged in enforcement activities in the District, Slack next focuses on Phoji's commercialization activities and attempts to recharacterize them as efforts by Phoji to "exercise its monopoly granted by the '149 patent— *i.e.*, to license or enforce its patent rights." This, like the above arguments, is a mischaracterization of the facts and law. None of Phoji's *commercialization activities*, including (i) the Connected Marketer Institute, which has since disbanded; (ii) the Connected Marketer Summit, which resulted in no profitable connections; (iii) Mr. Christensen's interview with Michael Becker; (iv) the proof-of-concept strategy, which occurred prior to Phoji generating

revenue; or (v) putting the App on the Apple App Store or the Google Play App Store, involved the *enforcement* of the '149 patent, a critical factor in determining whether specific personal jurisdiction is proper. Dkt. 23 ¶¶ 30–45. The above activities involved commercialization of the '149 patent, not the enforcement of it.

Lastly, Slack claims that Phoji has not offered a reason to presume that Mr. Christensen did not visit California for business in January 2020. Phoji has offered such a reason—Mr. Christensen's sworn declaration. *Id.* ¶ 56. A cancelled business trip cannot confer jurisdiction. Slack bears the burden of establishing facts to support its claim of jurisdiction. Bald speculation by its counsel is not evidence.

### B. Phoji's Other Contacts With This District Do Not Relate To Enforcement Or Defense Of The '149 Patent And Are Insufficient To Confer Specific Personal Jurisdiction.

Contrary to Slack's contentions, Phoji's contacts with this District do not relate to the enforcement or defense of the '149 patent. And this Court has consistently held that letters and calls alone are insufficient to confer specific personal jurisdiction. *See, e.g., Petzila, Inc. v. Anser Innovation LLC*, 620 F. App'x 941, 943 (Fed. Cir. 2015); *Adobe Sys. Inc. v. Tejas Research, LLC*, No. C-14-0868 EMC, 2014 WL 4651654, at *3 (N.D. Cal. Sept. 17, 2014); *Square, Inc. v. Morales*, No. C 13-01431 SBA, 2013 WL 6199281, at *5 (N.D. Cal. Nov. 27, 2013). Slack argues that Federal Circuit cases overturn that precedent. However, a close reading of the cases relied on by Slack indicates that the Federal Circuit considered contacts by the declaratory-judgment defendant *beyond* just the letters or calls. *See, e.g., Jack Henry*, 910 F.3d at 1205 (highlighting that defendant had "undertaken a licensing program, with threats of litigation, directed to [eleven] Banks" and defendant's contacts with the eleven banks relate to defendant's "only business, that of licensing and litigating its patents"); *Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1311 (Fed. Cir. 2019) (considering both defendant's cease-and-desist letter *and* its previous successful sublicense agreements). The cases cited by Phoji follow Federal Circuit precedent and remain good law.

*Jack Henry* was discussed in detail above and is distinguishable. Suffice it to say, Phoji is an operating company, not a patent assertion entity. It is not in the business of simply

licensing and litigating the '149 patent. And it didn't send enforcement letters to 11 companies.

*Genetic Veterinary Sciences* is similarly distinguishable, as the court based its decision to find specific personal jurisdiction on "the cease-and-desist letter *taken together with both* of [defendant's] successful efforts to commercialize by sublicensing" the patent at issue. *Genetic Veterinary Scis.*, 933 F.3d at 1311 (emphasis added). The *Genetic Veterinary Sciences* court found that the defendant, similar to PET in *Jack Henry*, is "not merely a remote patentee . . . but instead, it *is* the U.S. enforcer." *Id.* (emphasis in original). Phoji is not a patent enforcer. It is a small, early-stage company focused on commercializing the '149 patent. Dkt. 23 ¶ 39.

As the *Red Wing* court held, such offers to license a patent within notice letters do not, by themselves, confer specific personal jurisdiction. *Red Wing*, 148 F.3d at 1361. The *Red Wing* court rejected an assertion that three letters alone conferred jurisdiction. *Id.* at 1359. The court did so despite the defendant having 34 licensees in the venue, many of whom maintained retail stores there. *Id.* at 1360–61. The court elaborated as follows:

> Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.

*Id.*

*Red Wing* and *Avocent* remain good law. *Red Wing* continues to be cited with approval within this District subsequent to *Genetic Veterinary Sciences*. *See ZTE (USA) Inc. v. AGIS Software Dev. LLC*, No. 18-CV-06185-HSG, 2019 WL 4345961, at *6 (N.D. Cal. Sept. 12, 2019). While it is true that *Genetic Veterinary Services* held that *Red Wing* and *Avocent* did not establish a bright-line rule that letters alone can *never* establish personal jurisdiction, Phoji has not asked the Court to apply a bright-line rule. Moreover, *Genetic Veterinary Services* did not hold that such letters *always* establish personal jurisdiction. Rather, it held that a court must consider all the defendant's contacts with the forum to determine if specific personal jurisdiction is proper. *Genetic Veterinary Scis.*, 933 F.3d at 1310–11 ("[T]he first two factors of the due process inquiry for specific personal jurisdiction . . . are met based upon [defendant's] sending of the cease-and-desist letter *together with* its commercial sublicenses.") (emphasis added). That is

exactly what Phoji has asked the Court to do.

Slack again attempts to use Phoji's *commercialization* efforts surrounding the '149 patent as proof that this case arises from and relates to Phoji's "enforcement activities." As stated in detail above, Phoji's efforts to commercialize the '149 patent do not, in any way, relate to any enforcement activities. *Petzila,* 620 F. App'x at 943 ("A defendant patentee's own commercial activities are irrelevant to [the specific personal jurisdiction] test because they are not materially related to patent enforcement or defense."). "What the patentee makes, uses, offers to sell, sells, or imports is of no real relevance to the enforcement or defense of a patent, because the federal patent laws do not create any affirmative right to make use, or sell anything." *Avocent*, 552 F.3d at 1335 (quotations omitted). Slack does not cite any caselaw rebutting the proposition that commercial activities are not enforcement activities. Rather, Slack attempts to recharacterize Phoji's placement of the App in the Apple App Store and Google Play App Store as some sort of agreement wherein Phoji "hired" Apple and Google to distribute the App. But that assertion has no support. Dkt. 23 ¶ 15. Moreover, Phoji does not recall entering any agreement whatsoever with Google and any agreement that Phoji entered with Apple concerned licensure of *Apple's software*, not the '149 patent. *Id.* ¶¶ 26, 28–29. Slack's arguments to the contrary lack support.

Phoji does not have any contacts with this District that materially relate to enforcement or defense of the '149 patent. The only contacts Phoji has are the correspondence and telephone calls concerning the license negotiation. Slack has failed to prove that Phoji "purposefully directed its activities at residents of the forum" or that this action "arises out of or relates to those activities." *Breckenridge*, 444 F.3d at 1363. Therefore, it has failed to prove the second prong of the specific personal jurisdiction analysis. Slack's assertion that specific jurisdiction can be based solely on Phoji's letters and phone calls is wrong; such a finding would not comport with fair play and substantial justice. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202, 1206 (Fed. Cir. 2003); *Red Wing*, 148 F.3d at 1361.

**IV.   JURISDICTIONAL DISCOVERY IS UNWARRANTED BECAUSE SLACK HAS NOT PROVEN IT CAN SUPPLEMENT ITS JURISDICTIONAL ALLEGATIONS THROUGH DISCOVERY.**

Slack next alleges that this Court should grant jurisdictional discovery. However, Slack

has not met its burden of demonstrating that discovery is warranted. Jurisdictional discovery is proper when a plaintiff shows it can "supplement its jurisdictional allegations through discovery." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). And jurisdictional discovery "should be granted where pertinent facts bearing on the question of jurisdiction are controverted." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 (9th Cir. 1977) (quotations omitted). But as set forth in the Motion, this Reply, and the Christensen Declaration, no pertinent facts bearing on the question of jurisdiction are controverted. Slack's assertions to the contrary are "attenuated and based on bare allegations." *Ross v. Skanska USA Civil W. Rocky Mountain Dist., Inc.*, No. C-13-5856 EMC, 2014 WL 806261, at *1 (N.D. Cal. Feb. 27, 2014).

Slack further fails to demonstrate that jurisdictional discovery will reveal facts required to prove that Phoji is subject to personal jurisdiction. "Such a showing is especially important where, as here, the defendant enters declarations into evidence specifically denying [plaintiff's] jurisdictional allegations." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1023 (Fed. Cir. 2009); *see also Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) ("Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery.") (quotations omitted). Many of the assertions upon which Slack bases its jurisdictional discovery requests are easily disproven by the Christensen Declaration and are uncontroverted. As such, this Court need not permit such jurisdictional discovery.

First, Slack's request for discovery "reflecting any travel and correspondence into California by Phoji employees and executives in the last five years" is extremely broad, especially since it is made on the false allegation that Mr. Christensen traveled to California for business in January 2020.[2] Dkt. 29 at 14. This claim was disproven by Mr. Christensen's own sworn declaration in which he stated that although he "had planned to visit Los Angeles, California for business, that trip got canceled." Dkt. 23 ¶ 56. Slack's speculation to the contrary does not make this item controverted. As there are no controverted facts relating to Mr.

Christensen's cancelled business trip to California in January 2020, this request for discovery should be denied.

Second, Slack requests discovery "concerning the full scope of Phoji's efforts to license or enforce the '149 patent in California," including "documents referring to the '149 patent . . . and documents reflecting travel made to or from California related to the '149 patent or Phoji's app." Dkt. 29 at 15. This request is likewise broad and overreaching. Moreover, it does not specifically address any controverted facts that Slack asserted in its Complaint. Rather than offering evidence to contradict the Christensen Declaration, Slack mischaracterizes the actual facts in an effort to show a disputed fact where none exist. The Christensen Declaration states that "Phoji has not granted any exclusive licenses to any individual or entity concerning the '149 patent" and "Phoji does not have any license or distribution agreements nor does it have any partnerships with any companies or individuals located in California." Dkt. 23 ¶¶ 15, 23. Slack again fails to identify any facts or evidence that contradict the Christensen Declaration. The Christensen Declaration also states that "Phoji has not directly or explicitly targeted users or brands in California" and that "none of Phoji's marketing, development, or other business activities are explicitly directed at the state of California." *Id.* ¶ 15. Phoji's use of sample, proof of concept social media posts involving Jamba Juice and Seatninja—entities who never have had a business relationship with Phoji—are not evidence that Phoji has targeted California. Moreover, the Christensen Declaration explicitly states that Phoji has no sales representatives, business licenses, or financial interests in California. *Id.* ¶¶ 15–17. Next, Slack incorrectly uses Phoji's and Mr. Christensen's relationship with Michael Becker and his related entities as proof that Phoji has attempted to license the '149 patent in the past. None of these assertions demonstrate controverted facts. As there are no controverted facts, Slack's request for jurisdictional discovery should be denied.

Lastly, Slack requests discovery concerning Phoji's distribution and sales in California. Dkt. 29 at 15. In support of this request, Slack cites nonexistent distribution agreements between Phoji and Apple or Google concerning the placement of the App in the Apple App Store and the

---

[2] Slack provides no justification for discovery in 2015-2016, prior to issuance of the '149 patent.

Google Play App Store. *Id.* 9.  Slack contends that by making the App available on the respective platforms, "a significant share of Phoji's mobile app distributions occur within California" and that Phoji had a "distribution network and ongoing sales" in the District.  Again, these unsupported assertions are disproven by the Christensen Declaration and the Motion.  Contrary to what Slack asserts, Phoji signed a form contract concerning a license to *Apple's software* and Phoji does not recall entering into any agreements with Google related to the App.  Dkt. 23 ¶¶ 26, 28–29.  Phoji has no business relationship with either Apple or Google, let alone a distributorship relationship.  *Id.* ¶ 29.  Phoji does not have any sales representatives located in California, nor does it have any business licenses in California.  *Id.* ¶¶ 13, 16–17.  It has no revenue in California.  *See id.* ¶ 18.  Furthermore, Phoji does not have any license or distribution agreement or any partnership with *any companies* or individuals located in California, nor has it done *substantial business* in California.  *Id.* ¶ 15.  Because all the factual allegations identified by Slack relate to uncontroverted facts, its request for jurisdictional discovery should be denied.

## V. CONCLUSION.

This Court lacks personal jurisdiction over Phoji.  Slack does not claim general jurisdiction and its basis for specific jurisdiction is lacking.  It is based solely on letters, emails, and phone calls.  Without other activity relating to enforcement of the '149 patent, Slack cannot establish a prima facie case of jurisdiction.  Slack's claim of personal jurisdiction on these facts does not comport with fair play and substantial justice.  Accordingly, Phoji respectfully requests that this Court deny Slack's request for discovery, and grant Phoji's motion to dismiss Slack's Complaint.

Dated:  July 13, 2020.

        **DEWITT LLP**
        By:   */s/ Elijah B. Van Camp*
              Elijah B. Van Camp (SBN 252289)
              Two East Mifflin Street, Suite 600
              Madison, WI 53703
              evc@dewittllp.com
              Telephone:  (608) 255-8891
              Facsimile:  (608) 252-9243

        ***Attorneys for Defendant Phoji, Inc.***