1

2

3

4

5

6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7

8

9

10

11

12

| | |
|---|---|
| SLACK TECHNOLOGIES, INC., | Case No. 20-cv-01509-EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| PHOJI, INC., | Docket No. 21 |
| Defendant. | |

13

14

15

16

17

18

Plaintiff Slack Technologies, Inc. has sued Defendant Phoji, Inc., seeking a declaration that it does not infringe Phoji's '149 patent.  Currently pending before the Court is Phoji's motion to dismiss for lack of personal jurisdiction.  Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Phoji's motion to dismiss.  Slack's request for jurisdictional discovery is denied.

### I.     FACTUAL & PROCEDURAL BACKGROUND

19

20

21

Phoji is a Software as a Service ("SaaS") company.  It has a "cloud-based web app that enables users to create custom photo-based emojis."  Christensen Decl. ¶ 4.  Phoji's product practices the invention claimed in the '149 patent.

22

23

24

25

26

27

28

There appears to be no material dispute that, in or about June 2019, Phoji – which is based in Minneapolis, Minnesota – reached out to Slack – which is based on San Francisco, California – via letter.  In the letter, Phoji informed Slack that it owns the '149 patent and that it was "'approaching companies that may have a business interest in licensing Phoji's patent portfolio.'"  Compl. ¶ 16.  Phoji also asserted that "'[t]he utilization and deployment of the Slack Emoji . . . make us believe that Slack would find it beneficial to license Phoji, Inc. intellectual property.'"  Compl. ¶ 16.  After Slack denied infringement of the '149 patent, Phoji sent another letter in or

United States District Court
Northern District of California

1   about October 2019, asserting that "'Slack infringes the claims of the '149 patent'" and enclosing

2   a partial claim chart in support.  Compl. ¶ 17.

3         Subsequently, between October 14, 2019, and February 20, 2020, Phoji and Slack

4   exchanged more than a dozen communications (both oral and written) about alleged infringement

5   of the '149 patent.  *See* Compl. ¶¶ 18-32.  For example:

6          •  In December 2019, Phoji sent a letter to Slack stating that "it can demonstrate

7             Slack's past and ongoing infringement of the '149 patent caused it substantial

8             damages," and, "[w]hile Phoji is open to reasonable negotiations," "further

9             inflexible responses [on the part of Slack] will leave us with little choice but to

10            consider alternative paths to address Slack's infringement of the '149 patent."

11            Chen Decl., Ex. A (letter); *see also* Compl. ¶ 21.

12          •  In January 2020, Phoji sent an email to Slack stating that "there is great value for

13             both of our organizations if we resolve this [dispute] in a partnership and with a

14             License Agreement"; moreover, "there is significant negative impact to both

15             organizations if there is a formal legal process."  Chen Decl., Ex. B (email); *see*

16             *also* Compl. ¶ 30.

17          •  In February 2020, Phoji sent a letter to Slack, stating that it "is committed to taking

18             the necessary steps to protect its valuable intellectual property rights" and asking

19             whether Slack was "interested in a business solution and avoiding the exposure and

20             costs if Phoji is forced to litigate its infringement claims."  Chen Decl., Ex. C

21             (letter); *see also* Compl. ¶ 31.  In the letter, Phoji enclosed a claim chart to support

22             its claim of infringement.  *See* Compl. ¶ 31; Chen Decl., Ex. C.

23         Apparently, the parties did not reach any resolution as Slack filed its declaratory judgment

24   complaint on February 28, 2020.

25         In its complaint, Slack asserts that the communications described above are not the only

26   contacts that Phoji has had with California.  Specifically, Slack alleges that Phoji distributes its

27   mobile app through two California-based businesses, Google and Apple.  Slack also alleges that

28   Phoji conducted business in California with the following companies:

- *mCordis.*  mCordis is a marketing company.  According to Slack, "Phoji is a charter member of mCordis's The Connected Marketer Institute, which helps 'brand marketers and marketing technology providers understand and adopt new strategies to serve connected individuals, in real-time, at scale.'"  Compl. ¶ 48.  As a charter member, Slack alleges that Phoji attended the Connected Marketer Institute Summit in San Francisco on January 23 and 24, 2017.  *See* Compl. ¶ 45 (showing a Phoji Facebook post stating, "Phoji is excited to be attending the Connected Marketer Summit in San Francisco on January 23 and 24").

- *Identity Praxis, Inc.*  Slack alleges that, on May 24, 2016,  Identity Praxis and mCordis managing partner, Michael Becker, posted an interview with Jon Christensen, CEO of Phoji, on Identity Praxis's website.  *See* Compl. ¶ 49 (https://identitypraxis.com/2016/05/24/an-interview-with-phoji/).

- *Seatninja; Stone Brewing World Bistro & Gardens; and Jamba Juice.* According to Slack, Phoji's website features examples of its product being used in two advertisements: one featuring Jamba Juice and the other featuring both Seatninja and Stone Brewing.  *See* Compl. ¶¶ 50-51 (http://phojiapp.com/). Both advertisements mention California locations.  *See* Compl. ¶ 50 (Jamba Juice advertisement stating "Stop by Escondido Promenade"); Compl. ¶ 51 (Seatninja advertisement stating "Strone Brewing World Bistro & Gardens – Liberty Station – San Diego").

Finally, Slack alleges that Mr. Christensen traveled to California in January 2020 to conduct business.  *See* Compl. ¶ 46.

In response to the above allegations, Phoji has submitted a declaration from Mr. Christensen addressing Phoji's contacts with the above-named companies.  In his declaration, Mr. Christensen also denies traveling to California in January 2020 to conduct business.

## II.      DISCUSSION

A.      Legal Standard

A defendant may move to dismiss based on lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  In determining whether there is personal jurisdiction over a defendant in a patent case, Federal Circuit law applies.  *See Nuance Commc'ns, Inc. v. Abbyy Software House,* 626 F.3d 1222, 1230 (Fed. Cir. 2010) ("The law of the Federal Circuit, rather than that of the regional circuit in which the case arose, applies to determine whether the district court properly declined to exercise personal jurisdiction over an out-of-state accused infringer.").  This is true even where the patent action is one for a declaratory judgment that there is no infringement or that the patent is invalid.  *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1361 (Fed. Cir. 2006) ("The issue of personal jurisdiction in a declaratory action for noninfringement is 'intimately related to patent law' and thus governed by Federal Circuit law regarding due process.").

Although Federal Circuit law applies on the substantive issue of whether there is personal jurisdiction, arguably, regional circuit law should apply with respect to the procedural aspect of determining such.  The Court, however, need not resolve this issue as both Ninth Circuit law and Federal Circuit law are in agreement on the procedure to be applied.  That is, where written materials only are submitted in a dispute over personal jurisdiction, a plaintiff need only make a prima facie showing of jurisdiction.  *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (emphasis in original).  Uncontroverted allegations in the plaintiff's complaint are accepted as true, and conflicts in, *e.g.*, statements contained in affidavits are resolved in the plaintiff's favor. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *Elecs. For Imaging*, 340 F.3d at 1349.

B.      Specific Jurisdiction

"'Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process.'"  *Avocent Huntsville Corp. v. Aten*

1 *Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008).

> [B]ecause California's long-arm statute is coextensive with the limits
> of due process, the two inquiries collapse into a single inquiry:
> whether jurisdiction comports with due process.
>
> In the seminal case on personal jurisdiction, *International Shoe Co.
> v. Washington*, 326 U.S. 310 (1945), the Supreme Court held that
> "due process requires only that in order to subject a defendant to a
> judgment in personam, if he be not present within the territory of the
> forum, he have certain minimum contacts with it such that the
> maintenance of the suit does not offend 'traditional notions of fair
> play and substantial justice.'"

*Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (emphasis omitted).

Whether a defendant has sufficient "minimum contacts" with the forum state to justify the exercise of jurisdiction depends on whether the plaintiff asks a court to exercise general, as opposed to specific, jurisdiction over the defendant. In the instant case, Slack does not contend that general jurisdiction over Phoji is appropriate. Rather, it argues only that Phoji is subject to specific jurisdiction.

In determining whether specific jurisdiction is appropriate, courts in the Federal Circuit apply a three-part analysis:

> (1) whether the defendant "purposefully directed" its activities at
> residents of the forum; (2) whether the claim "arises out of or relates
> to" the defendant's activities with the forum; and (3) whether
> assertion of personal jurisdiction is "reasonable and fair." The first
> two factors correspond with the "minimum contacts" prong of the
> *International Shoe* analysis, and the third factor corresponds with
> the "fair play and substantial justice" prong of the analysis.

*Id.*

The plaintiff has the burden of establishing the first two elements. If it establishes a prima facie case for the exercise of jurisdiction under these two prongs, the burden then shifts to the defendant to demonstrate that the exercise of jurisdiction would not be reasonable or fair. *See, e.g.*, *Electronics*, 340 F.3d at 1350 ("While the plaintiff bears the burden to establish minimal contacts, upon this showing, defendants must prove that the exercise of jurisdiction is unreasonable.").

Although the specific jurisdiction test is, as a facial matter, fairly straightforward, the Federal Circuit has addressed how analysis for "defensive" declaratory judgment suits for

1    noninfringement or invalidity is somewhat unique – particularly, when compared to the analysis

2    that applies to "affirmative" patent infringement suits.  For affirmative patent infringement suits,

3    >the claim asserted by the patentee plaintiff is that some act of
     making, using, offering to sell, selling, or importing products or
4    services by the defendant constitutes an infringement of the
     presumptively valid patent named in suit.  Thus, for purposes of
5    specific jurisdiction, the jurisdictional inquiry is relatively easily
     discerned from the nature and extent of the commercialization of the
6    accused products or services by the defendant in the forum.  In such
     litigation, the claim both "arises out of" and "relates to" the
7    defendant's alleged manufacturing, using, or selling of the claimed
     invention.

8

9    *Avocent*, 552 F.3d at 1332.

10        In contrast, in a declaratory judgment suit for noninfringement or invalidity,

11   >the claim asserted by the plaintiff relates to the "wrongful restraint
     [by the patentee] on the free exploitation of non-infringing goods . .
12   . [such as] the threat of an infringement suit." . . . Such a claim
     neither directly arises out of nor relates to the making, using,
13   offering to sell, selling, or importing of arguably infringing products
     in the forum, but instead arises out of or relates to the activities of
14   the defendant patentee in enforcing the patent or patents in suit.  The
     relevant inquiry for specific personal jurisdiction purposes then
15   becomes to what extent has the defendant patentee "purposefully
     directed [such enforcement activities] at residents of the forum," and
16   the extent to which the declaratory judgment claim "arises out of or
     relates to those activities." . . .

17

18   *Id.*

19        A common act of enforcement vis-à-vis the declaratory judgment plaintiff is, of course, an

20   "infringement letter" – *i.e.*, a cease-and-desist letter that is sent by the declaratory judgment

21   defendant to the declaratory judgment plaintiff and that threatens a suit for patent infringement.

22   *See id.* at 1333); *see also Red Wing Shoe Co. v. Hockerson-Halberstadt*, Inc., 148 F.3d 1355, 1360

23   (Fed. Cir. 1998).  According to the Federal Circuit,

24   >[w]hile such letters themselves might be expected to support an
     assertion of specific jurisdiction over the patentee because "the
25   letters are 'purposefully directed' at the forum and the declaratory
     judgment action 'arises out of' the letters," we have held that, based
26   on "policy considerations unique to the patent context," "letters
     threatening suit for patent infringement sent to the alleged infringer
27   by themselves 'do not suffice to create personal jurisdiction.'"  This
     is "because to exercise jurisdiction in such a situation would not
28   'comport with fair play and substantial justice.'"  "Principles of fair

United States District Court
Northern District of California

> play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum.  A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement.  Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness."  *Thus, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit."*

*Avocent*, 552 F.3d at 1333 (emphasis added).[1]  In short, even though a "defendant purposefully directs [its] activities at residents of the forum [by] send[ing] a cease and desist letter to a potential plaintiff in that particular forum," and "a subsequent declaratory judgment action by that potential plaintiff 'arises out of or relates to' . . . the cease and desist letter," "the third part of the [specific jurisdiction] test" generally requires that personal jurisdiction be predicated on "more" than just "the act of sending ordinary cease and desist letters into [the] forum."  *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037-38 (Fed. Cir. 2017).

As to what kind of "other activities" can count toward establishing specific jurisdiction, the Federal Circuit has held (as noted above) that they must be "purposefully direct[ed] . . . at the forum" and "relate in some material way to the enforcement or defense of the patent" at issue. *Avocent*, 552 F.3d at 1336.  Examples of "other activities" include "initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Id.* at 1334.

Regarding license agreements, the Federal Circuit has explained that the specific nature of the agreement is important.  For example, an exclusive license agreement often involves a "relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities." *Breckenridge*, 444 F.3d at 1366.  As a result, the patent holder has

---

[1] The Federal Circuit's approach is consistent with *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (stating that "our 'minimum contacts analysis' looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"); *see also Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146 (9th Cir. 2017) (noting that, in Walden, "the forum state was only implicated by the happenstance of Plaintiffs' residence").

1    continuing obligations to the forum state when the exclusive licensee is a party residing or

2    regularly doing business in the forum.  *See Avocent*, 552 F.3d at 1334.  By contrast, where a non-

3    exclusive license is involved, an out-of-state patent holder generally does not have the same

4    obligations to the forum state because such agreements usually involve only "royalty or cross-

5    licensing payment."  *See Breckenridge*, 444 F.3d at 1366.  Similarly, a patent holder's

6    "commercialization efforts" such as what it "makes, uses, offers to sell, sells, or imports" are not

7    related to the enforcement or defense of the patent because "federal patent laws do not create any

8    affirmative right to make, use, or sell anything."  *Avocent*, 552 F.3d at 1335.

9    C.       "Other Activities"

10           In the instant case, Phoji contends that it never threatened litigation – at least not overtly –

11   in its pre-suit communications with Slack, and therefore this Court does not have specific

12   jurisdiction over it.  According to Phoji, in communicating with Slack, Phoji was simply exploring

13   a potential licensing agreement with Slack, and nothing more.

14           Phoji's argument lacks merit.  There is no requirement that a written or oral

15   communication explicitly threaten litigation before it can be counted as a relevant contact in a

16   declaratory judgment suit for noninfringement or invalidity.  Here, Phoji clearly accused Slack of

17   infringement; at least one letter referenced litigation explicitly, and other letters implicitly.  The

18   Court is therefore satisfied that the first and second parts of the specific jurisdiction test have been

19   satisfied.

20           That being said, as discussed above, the Federal Circuit case law indicates that, under the

21   third part of the specific jurisdiction test, "infringement letters" are generally not enough to

22   establish specific jurisdiction; rather, there must be, in addition, "'other activities' that relate to the

23   *enforcement* or the defense *of the validity* of the relevant patents" in the forum.  *Avocent*, 552 F.3d

24   at 1334 (emphasis in original).

25           In its papers, Slack argues that other activities are not *always* required, citing in support

26   *Jack Henry & Associates, Inc. v. Plano Encryption Technologies LLC*, 910 F.3d 1199 (Fed. Cir.

27   2018).  Slack correctly notes that, in *Jack Henry*, the Federal Circuit did hold that cease-and-desist

28   letters sent by the defendant, by themselves, did provide the basis for jurisdiction in a declaratory

United States District Court
Northern District of California

8

1  judgment action.  *See id.* at 1206 (rejecting the contention that "patent enforcement letters can

2  *never* provide the basis for jurisdiction in a declaratory judgment action"; "*Avocent* did not create

3  such a rule and doing so would contradict the Court's directive to 'consider a variety of interests'

4  in assessing whether jurisdiction would be fair") (emphasis added); *see also Genetic Veterinary*

5  *Sciences, Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1312 (Fed. Cir. 2019) (reaffirming

6  *Jack Henry*; stating that, "[a]s we have expressly stated[,] . . . *Avocent* did not create such a

7  [bright-line] rule, and doing so would contradict the Court's directive to 'consider a variety of

8  interests' in assessing whether jurisdiction would be fair").  But *Jack Henry* involves a unique set

9  of facts and is therefore distinguishable from the instant case.  *Jack Henry* was technically a

10  dispute regarding venue rather than personal jurisdiction.  *See Jack Henry*, 910 F.3d at 1201.  The

11  defendant was a Texas resident and its sole business was to enforce its intellectual property; it sent

12  two notice of infringement letters to eleven different plaintiffs (all banks) located in the Northern

13  District of Texas.  *See id.* at 1201, 1204.  In its second letter to the plaintiffs, the defendant

14  threatened litigation.  *See id.* at 1203.  The Federal Circuit reasoned that the defendant was subject

15  to venue in the Northern District of Texas because (1) the defendant's letters "purposefully

16  directed" its charges of infringement to all eleven plaintiff banks; (2) the charges of infringement

17  "arise out of or relate to" the defendant's patent licensing activities in the Northern District of

18  Texas; and (3) the defendant had not made a compelling case that jurisdiction in the Northern

19  District of Texas is inconvenient or unreasonable.  *Id.* at 1204.  Furthermore, the court held that

20  whether an out-of-state patent holder would be subjected to personal jurisdiction in the forum state

21  should rest on whether conferring jurisdiction would be "reasonable and fair."  *See* 910 F.3d at

22  1204.

23        According to Slack, *Jack Henry* is analogous to the instant case because, in both cases, the

24  defendant sent a number of cease-and-desist communications; in fact, the alleged number of

25  communications issued by Phoji to Slack in the instant case exceed the number of

26  communications issued by the defendant to each plaintiff bank in *Jack Henry*.  *Compare* Compl.

27  ¶¶ 16-32, *with Jack Henry*, 910 F.3d at 1201, 1204.  Nevertheless, the Court does not read *Jack*

28  *Henry* as turning on the number of communications per se.  Rather, what was notable in *Jack*

United States District Court
Northern District of California

*Henry* was that *eleven different banks* (all of which had received the same cease-and-desist letters from the defendant) came together as plaintiffs to sue the defendant patent holder. *See id.* at 1201, 1204. Had the banks not joined together and instead sued the defendant individually in eleven separate lawsuits, the *Jack Henry* court's analysis would likely have been more in line with earlier Federal Circuit cases requiring "other activities" along with cease-and-desist letters to find personal jurisdiction.

Although *Jack Henry* is instructive, it is not analogous to the case at bar. In the absence of facts similar to those in *Jack Henry* (*i.e.*, enforcement efforts against multiple entities within the forum state), Phoji's cease-and-desist communications to Slack are not sufficient, by themselves, to establish specific jurisdiction.

The Court therefore turns to the alternative position taken by Slack – *i.e.*, that, even if "other activities" are required, here, Phoji did engage in other activities purposefully directed at California and related to enforcement or defense of the '149 patent. Slack asserts that Phoji's other activities that should count toward personal jurisdiction include (1) distributing its mobile app to users through California-based companies Google and Apple and (2) conducting business in California and certain other companies. *See* Compl. ¶¶ 33-51.

1.      Phoji's Contacts with Google and Apple

According to Slack, Google and Apple serve as distributors of Phoji's mobile app, which practices the invention claimed in the '149 patent. Distribution takes place through, respectively, Google Play and the Apple App Store. Slack points out that, in *Genetic Implant Systems, Inc. v. Core-Vent Corp.*, 123 F.3d 1455 (Fed. Cir. 1997), the Federal Circuit found an "other activity" related to enforcement of a patent where a patentee contracted with an exclusive distributor to sell the patented products in the forum state. *See also Avocent*, 552 F.3d at 1334 (citing *Genetic Implant*).

As an initial matter, the Court notes that it is debatable whether Google and Apple can fairly be characterized as distributors of Phoji's products. As Phoji argued at the hearing on the motion to dismiss, Google and Apple simply offer a platform for app developers to sell their products.

However, even if Google and Apple could be deemed "distributors," *Genetic Implant* does not support Slack's position that there is "other activity" related to enforcement of the '149 patent in the instant case.  In *Genetic Implant*, the court was persuaded that there was "other activity" because the exclusive distributor agreement between the defendant and the third party "conveyed an implied license to the distributor, thereby surrendering the patentee's right to exclude the distributor under the patent," and the agreement contained "provisions similar to those typically found in a patent license agreement" – *e.g.*, the patentee "agreed to maintain all patents covering products" and "to file and prosecute applications for patents covering new products," and the patentee also "retained the right to pursue claims for infringement."  *Genetic Implant*, 123 F.3d at 1458-59.  In other words, there was "other activity" in *Genetic Implant* because the exclusive distributor agreement was an undertaking that imposed continuing enforcement obligations on the patentee in the forum.  *See Avocent*, 552 F.3d at 1335 (stating that "exclusive licensing agreements and other undertakings that impose enforcement obligations on a patentee or its licensee reflect the kind of 'other activities' that support specific personal jurisdiction in a declaratory judgment action"; in contrast, "the defendant patentee's own commercialization activity does not"); *cf. Breckenridge*, 444 F.3d at 1366 (noting that an exclusive license agreement often involves a "relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities").

Here, Slack has not shown how the alleged distribution agreements between Google and Phoji, and Apple and Phoji, bear any similarity to the distribution agreement in *Genetic Implant*.  Indeed, there is no evidence that the agreements with Apple App Store and Google Play contain any provisions imposing continuing obligations on Phoji with respect to the enforcement or defense of the '149 patent.  Given the nature of Google Play and the Apple App Store, no such obligation would be expected.

2.    Phoji's Other Contacts in California

Slack asserts that, aside from its relationships with Google and Apple, Phoji has other contacts with California – namely, its "participation in [the mCordis] marketing conference in San

Francisco"; its interview with Michael Becker, managing partner of California-based company Identify Praxis; its "sample social media posts" using California locations; and Phoji CEO Jon Christensen's alleged January 2020 business trip to California were all "made to exercise its monopoly granted by the '149 patent – all of which should also count as "other activity" for purposes of the specific jurisdiction test. The problem for Slack is that it fails to explain how any of these activities relate to the enforcement or defense of the '149 patent. *See Avocent*, 552 F.3d at 1336. For example, the mCordis marketing conference in San Francisco occurred two weeks before issuance of the '149 patent, and it is unclear how attending a marketing conference relates to the enforcement or defense of the patent. Similarly, Phoji's interview with Michael Becker and its use of sample social media posts featuring California locations appear to be general marketing activities meant to commercialize the '149 patent, not enforce it. Finally, Slack has not alleged that Mr. Christensen's disputed trip to California to "conduct business" was related to Phoji, and even if it was, it does not appear it was related to the enforcement or defense of the validity of the '149 patent. Thus, it appears at best, the above-named activities could be characterized as commercialization efforts. *See id.* at 1335 (defining "commercialization efforts" as what a patent holder "makes, uses, *offers to sell*, sells, or imports") (emphasis added). A patent holder's commercialization efforts in the forum state are "not related to the enforcement or defense of the patent." *See id.* Thus, the above-named activities are not "other activities" that would subject Phoji to personal jurisdiction. *See Avocent*, 552 F.3d at 1336.[2]

D.     Jurisdictional Discovery

        For the foregoing reasons, Slack has not made out a prima facie showing that there is specific jurisdiction in the instant case. Slack has not shown that, aside from its pre-suit communications with Slack, Phoji engaged in other activities related to the enforcement or defense of the '149 patent. Slack contends, however, that the Court should not grant Phoji's motion to dismiss at this time but rather first give Slack the opportunity to conduct jurisdictional discovery.

---

[2] Moreover, even if it were permissible to look at more generalized commercial activity not tied to enforcement such as sales of the invention claimed in the patent, Slack has not provided any concrete evidence indicating that the commercial activity in the forum is significant.

A district court has discretion in deciding whether to permit or deny jurisdictional discovery. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). "Discovery may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* A plaintiff need only present a "colorable basis" for personal jurisdiction in order to obtain discovery. *See Calix Networks, Inc. v. Wi-Lan, Inc.*, No. C-09-06038-CRB DMR, 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010). A court abuses its discretion in denying discovery where it "might well demonstrate judicially relevant facts." *Id.* at *3 (quoting *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)). However, "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, [a] [c]ourt need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006); see also *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (stating that a district court does not abuse its discretion in denying jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction"). Discovery is not warranted if a plaintiff cannot "demonstrate how further discovery would allow it to contradict the [defendant's] affidavits." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th. Cir. 1995).

Here, the Court, in the exercise of its discretion, denies Slack's request for jurisdictional discovery. A party seeking to establish general jurisdiction must meet a fairly high standard. *See Daimler AG v. Bauman*, 571 U.S. 117, 120 (2014) (explaining that the proper inquiry is not whether the defendant has "continuous and systematic" contacts in the forum state, but instead whether the defendant's affiliations with the forum state are "so continuous and systematic as to render it essentially at home in the forum state"). If Phoji was essentially at home in California, Slack would have been able to point to far more evidence than it has, even without discovery. To the extent Slack asks for information about distribution of Phoji's product in California to support a specific jurisdiction argument, that is also, in effect, a fishing expedition. As discussed above, commercialization of a patented product does not constitute other activity related to enforcement or defense of the validity of a patent. Finally, even if Phoji had relationships with companies such

as Jamba Juice, Seatninja, and Stone Brewing, or similar relationships with other California

companies, there is nothing to indicate that the relationships – even if involving a license – would

involve continuing enforcement obligations on the part of Phoji.

### III.       CONCLUSION

For the reasons stated above, the motion to dismiss is **GRANTED**.  The Clerk of the Court

shall enter a final judgment in accordance with the above and close the file in this case.

This order disposes of Docket No. 21.


**IT IS SO ORDERED**.


Dated: August 13, 2020

_____
EDWARD M. CHEN
United States District Judge

14